2005 ND 97

Jason Alan ANDERSON, Petitioner and Appellee

v.

DIRECTOR, NORTH DAKOTA DE-PARTMENT OF TRANSPORTA-TION, Respondent and Appellant.

No. 20040337.

Supreme Court of North Dakota.

May 17, 2005.

Andrew Moraghan, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for respondent and appellant.

Jason A. Anderson, pro se, Fargo, N.D., petitioner and appellee.

MARING, Justice.

[¶ 1]  The Director of the North Dakota Department of Transportation ("Department"), appeals from the district court's judgment reversing the Department's decision to suspend Jason Anderson's driving privileges for ninety-one days. We affirm the district court's judgment reversing the administrative suspension.

I

[¶ 2]  On April 30, 2004, the Cass County Sheriff's Office received a call from a motorist reporting a "possible reckless

driver or drunk driver." Allegedly, the informant witnessed Anderson's vehicle hit cones in a construction zone. The informant also reported the license plate number, color, and make of Anderson's vehicle. Some of this information was relayed by the dispatcher to a patrolling deputy. The deputy pursued the vehicles, and was aware that the informant was continuing to follow Anderson's vehicle and continuing to provide updates regarding the direction of travel and location to the sheriff's dispatch.

[¶ 3] After catching up to both vehicles, the deputy passed the informant and continued to follow Anderson for approximately two miles before stopping him. The deputy did not observe Anderson perform any illegal or erratic driving before the stop. The informant's name had not been relayed to the deputy. However, the deputy was aware the informant had pulled off to the side of the road and was being interviewed by an assisting officer, when the deputy stopped Anderson. The deputy testified he witnessed slurred speech and detected the odor of alcohol when speaking with Anderson. The deputy asked Anderson if his broken mirror was caused by hitting cones in the construction zone, and Anderson replied, "yes." The record is unclear whether the deputy learned of the construction zone allegation before he stopped Anderson.

[¶ 4] The deputy administered the HGN field sobriety test, which Anderson failed. Next, the deputy administered the one-leg-stand sobriety test, which Anderson stated he could not complete because he had too much to drink. The deputy arrested Anderson and transported him to the Cass County Sheriff's Office where Anderson performed and failed an Intoxilyzer test. . Based on this evidence, the Department suspended Anderson's driver's license. The district court reversed the Department's decision, finding the arresting officer did not have the required "reasonable and articulable suspicion" necessary to support the stop of Anderson's vehicle.

[¶ 5] The Department appeals the district court's judgment.

## II

[¶ 6] Judicial review of a decision to suspend a driver's license is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Larsen v. North Dakota Dep't of Transp.*, 2005 ND 51, ¶ 4, 693 N.W.2d 39. Under N.D.C.C. § 28–32–46, the district court must affirm an order of an administrative agency unless it finds any of the following are present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 7] On an appeal from a district court's ruling on an administrative appeal,

our Court reviews the agency's order in the same manner. N.D.C.C. § 28–32–49; *Larsen*, 2005 ND 51, ¶ 4, 693 N.W.2d 39.

[¶ 8] Under the Fourth Amendment of the United States Constitution, police may, in appropriate circumstances and in an appropriate manner, detain an individual for investigative purposes when there is no probable cause to make an arrest if a reasonable and articulable suspicion exists that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

[¶ 9] We have discussed three situations that provide an officer reasonable and articulable suspicion to stop a vehicle: (1) when the officer relied on a directive or request for action from another officer; (2) when the officer received tips from other police officers or informants, which were then corroborated by the officer's own observations; and (3) when the officer directly observed illegal activity. *In re T.J.K.*, 1999 ND 152, ¶ 8, 598 N.W.2d 781. In the present case, the deputy was not acting on a directive from another officer and he did not directly observe illegal activity. Here, the deputy only received information from the dispatcher.

[¶ 10] In *State v. Miller*, 510 N.W.2d 638 (N.D.1994), this Court discussed the analytical framework necessary to determine whether an informant's tip is reliable enough to raise a reasonable suspicion without the officer's corroboration:

> To make a legal investigative stop of a vehicle, an officer must have a reasonable and articulable suspicion that the motorist has violated or is violating the law. *E.g., Wibben v. North Dakota State Highway Comm'r*, 413 N.W.2d 329 (N.D.1987). Information from a tip may provide the factual basis for a stop. *State v. Neis*, 469 N.W.2d 568 (N.D.

1991). In evaluating the factual basis for a stop, we consider the totality of the circumstances. *E.g., Geiger v. Backes*, 444 N.W.2d 692 (N.D.1989). This includes the quantity, or content, and quality, or degree of reliability, of the information available to the officer. *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Although the totality-of-the-circumstances approach makes categorization difficult, our cases involving reasonable suspicion arising from an informant's tip demonstrate the inverse relationship between quantity and quality, and may be analyzed generally according to the type of tip and, hence, its reliability. As a general rule, the lesser the quality or reliability of the tip, the greater the quantity of information required to raise a reasonable suspicion. *Id.* at 330, 110 S.Ct. at 2416.

*Miller*, at 640.

[¶ 11] The Department argues the totality of the circumstances in this case justify the stop of Anderson's vehicle. The Department contends that because the informant's identity was easily ascertainable at the time of the stop, it was not an anonymous tip. Therefore, the quality or reliability was such that it was not necessary for the arresting deputy to corroborate the activity. The Department argues that this case differs from the tip in *Miller*, in which we concluded the tip was anonymous and a lawful stop could not be made without the officer corroborating or witnessing signs of impairment.

[¶ 12] In *Miller*, a police dispatcher received a call from a person who identified himself as "Jody with Wendy's," reporting that a possible drunk driver was in the Wendy's drive-up lane who "could barely hold his head up." *Id.* at 639. The informant also provided the vehicle's license plate number. *Id.* The dispatcher contact-

ed a police officer and relayed the information the informant provided, but did not tell the officer the identity of the informant. *Id.* The officer quickly arrived at the scene and saw the vehicle exiting the drive-up lane. *Id.* The vehicle exited the parking lot, drove part way around the restaurant, and then re-entered the lot and parked. *Id.* The officer confirmed the license plate matched the report, but the officer did not notice any erratic driving. *Id.* The officer parked behind the vehicle and turned on the patrol car's warning lights. *Id.*

[¶ 13] The *Miller* plurality opinion concluded:

Although [the officer] confirmed the location and license number of the pickup before making the stop, he did not notice any traffic violations, erratic driving, or anything that he thought was "real unusual." [The officer's] observations of innocent facts do not meet the requirement of *Neis*, [469 N.W.2d 568,] that there be corroboration of suspicious conduct when an anonymous tip, short on reliability, is also short on specifics. We believe that the combination of the anonymous tip and [the officer's] observations of innocent facts is insufficient to raise a reasonable and articulable suspicion.

*Miller*, 510 N.W.2d at 644–45.

[¶ 14] *Miller* is instructive, but not controlling. Whereas, in *Miller*, we held the informant was anonymous because the identity was not relayed to the arresting officer, the informant in this case was not anonymous because his identity, while unknown to the arresting deputy at the time of the stop, was easily ascertainable. The arresting deputy was aware, via the informant's report to dispatch thereafter relayed to him, that the informant was driving a particular vehicle and following the suspect's vehicle. The deputy observed

the informant's vehicle pull over at the time of the stop and knew the informant was being interviewed by an assisting deputy at the same time he had stopped Anderson.

[¶ 15] Information from an informant whose identity is easily ascertainable has a higher indicia of reliability than information obtained from a purely anonymous informant. *See State v. Slater*, 267 Kan. 694, 986 P.2d 1038 (1999); *State of Wisconsin v. Rutzinski*, 241 Wis.2d 729, 623 N.W.2d 516 (2001).

[¶ 16] In *Slater*, the Kansas Supreme Court explained how tips of this nature can be of sufficient reliability:

Second on the scale of reliability are those tips in which, although the informant does not identify himself or herself, the informant gives enough information that his or her identity may be ascertained. This occurs where the informant states that he or she is calling from his or her place of business, or where the informant in person makes contact with the police officer. In such cases courts generally find such a tip to be reliable. *See People v. Willard*, 228 Cal.Rptr. 895, 183 Cal.App.3d Supp. [5, 8 (1986)] (motorist in car beside an officer in moving traffic told the officer that the driver of another car was drunk and pointed to the car); *Peterson v. Tipton*, 833 P.2d [830,] 831–32 [ (Colo.App.1992)] (clerk at a gas station reported to a dispatcher that an intoxicated male was getting into a car and the clerk later pointed the car out to the officer); *State v. Sampson*, 669 A.2d [1326], 1328 [(Me. 1996)] (although anonymous, a reasonable inference showed that informant was an employee of a doughnut shop); *Playle v. Commissioner of Public Safety*, 439 N.W.2d [747,] 748 [(Minn.App. 1989)] (caller identified himself as an employee of the restaurant); *State v.*

*Ramey,* 129 Ohio App.3d [409,] 417, 717 N.E.2d 1153 [(1998)] (passerby flagged down an officer to give information); *Rittman v. State ex rel. Dept. of P. S.,* 875 P.2d [439,] 440–41 [(Okla.App.1994)] (officer was approached by citizens in a parking lot who pointed out a truck and an intoxicated individual in the truck); *State v. Sailo,* 910 S.W.2d [184,] 188 [(Tex.App.1995)] (citizen drove up to officer and shouted that he had seen a possible drunk driver who was driving all over the road). *But see State v. Tibbet,* 96 Or.App. 116, 118, 771 P.2d 654 (1989) (motorist drove up to an officer and gave a description of the car, stating that the person appeared to be intoxicated; tip was held not reliable); *Campbell v. Department of Licensing,* 31 Wash. App. 833, 835–36, 644 P.2d 1219 (1982) (motorist drove up to a car and yelled to an officer that a drunk driver was heading southbound, and gave a description of the vehicle; tip held not reliable).

*Slater,* 986 P.2d at 1043–44.

[¶ 17] In *Rutzinski,* the Wisconsin Supreme Court, in a factually similar case, concluded:

> [T]he informant in this case exposed him-or herself to being identified. The informant indicated to the police prior to the stop that he or she was in the vehicle in front of Rutzinski's pickup. Officer Sardina thus could infer that by revealing that he or she was in a particular vehicle, the informant understood that the police could discover his or her identity by tracing the vehicle's license plates or directing the vehicle to the side of the road. That is, like the officer in *Adams* [v. *Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972),] Officer Sardina could reasonably have concluded that the informant knew that he or she potentially could be arrested if the tip proved to be fabricated. *Accord*

*United States v. Sierra–Hernandez,* 581 F.2d 760, 763 (9th Cir.1978) (Kennedy, J.) (holding that by "presenting himself to the [police] and doing so while driving a car from which his identity might easily be traced, the [unidentified] informant was in a position to be held accountable for his intervention"); *State v. Slater,* 267 Kan. 694, 986 P.2d 1038, 1043 (1999) (holding and providing cites for cases from several jurisdictions which hold that tips from unidentified informants generally are reliable when "the informant gives enough information that his or her identity may be ascertained"). As explained in *Adams,* this threat of arrest could lead a reasonable police officer to conclude that the informant is being truthful.

Second, unlike the caller in [*Florida v.*] *J.L,* [529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000),] the informant in this case provided the police with verifiable information indicating his or her basis of knowledge. The informant explained that he or she was making personal observations of Rutzinski's contemporaneous actions. Additionally, the informant provided not only a description of Rutzinski's vehicle and the direction in which it was traveling, but also indicated the time at which Rutzinski's vehicle passed specific locations as it progressed toward Officer Sardina, Officer Sardina's arrival on the scene, and that Officer Sardina was following a black pickup. While many people may have been able to identify Rutzinski's vehicle and the general direction in which it was traveling, only a person contemporaneously observing the vehicle or possessing "inside information" (for example, a person in contact with Rutzinski at the time in question) would have been able to indicate where the vehicle was located and the setting surrounding the vehicle at the given time.

Thus, Officer Sardina reasonably could have inferred from this information that the informant had a reliable basis of knowledge.

And third, unlike the tip in *J.L.*, the tip in the present case suggested that Rutzinski posed an imminent threat to the public's safety. The informant in this case alleged that Rutzinski was driving erratically. Erratic driving is one possible sign of intoxicated use of a motor vehicle. *State v. Swanson*, 164 Wis.2d 437, 453 n. 6, 475 N.W.2d 148 (1991). As such, based on the reliability of and the allegations contained in the informant's tip, Officer Sardina reasonably could have suspected that Rutzinski was intoxicated. Accordingly, Officer Sardina was justified in initiating an investigative traffic stop of Rutzinski.

*Rutzinski*, 623 N.W.2d at 525–26.

[¶ 18] As in *Slater* and *Rutzinski*, the tip in this case has a higher indicia of reliability than information from a purely anonymous informant. Here, the deputy was aware before the vehicle stop that the informant could be identified because dispatch had described the informant's vehicle to him, and in addition, he observed the informant's vehicle pull over as he stopped Anderson and he knew an assisting officer was interviewing the informant. As the reliability of the tip moves up on the scale, the quantity of the information sufficient to raise a reasonable and articulable suspicion is less. *Miller*, 510 N.W.2d at 640.

[¶ 19] Here, the record indicates the informant reported to the dispatcher that he had witnessed a "possible reckless driver or drunk driver." He reported that he was following the suspect vehicle and continued to provide location updates. He reported a description of both his vehicle and the suspect vehicle, including the license plate numbers. The Department failed, however, to establish that the informant told the dispatcher the suspect hit cones in a construction zone and that the dispatcher gave that information to the deputy. The record indicates only that the dispatcher relayed to the deputy the descriptions of the informant and suspect's vehicles and that the informant had witnessed a "possible reckless driver or drunk driver."

[¶ 20] The Minnesota Supreme Court, in *Olson v. Comm'r of Public Safety*, 371 N.W.2d 552, 556 (Minn.1985), concluded that when the stop is based solely on an anonymous caller's tip, the "caller must provide at least some specific and articulable facts to support the bare allegations of criminal activity." In *Olson*, the deputies had not observed any erratic driving, and the anonymous caller had not given even minimal specific and articulable facts to support the caller's bare assertion of a possible drunk driver on the road. *Id.* at 556. The Minnesota Supreme Court concluded the traffic stop was unconstitutional. *Id.*

[¶ 21] On these particular facts, although we conclude this informant has a higher indicia of reliability than a purely anonymous informant, the communication by the dispatcher to the deputy of the bare assertion of a "possible reckless driver or drunk driver," is not of sufficient quantity to provide the reasonable and articulable suspicion sufficient to justify the stop of Anderson's vehicle.

### III

[¶ 22] The district court's judgment reversing the Department's suspension of Anderson's driver's license is affirmed.

[¶ 23] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and DALE V. SANDSTROM, concur.