2008 ND 38

**CITY OF MINOT, Plaintiff and Appellant**

v.

**Corey Lynn KELLER, Defendant and Appellee.**

Nos. 20070116, 20070117.

Supreme Court of North Dakota.

Feb. 25, 2008.

Mark Ashley Flagstad, Assistant State's Attorney, Minot, ND, for plaintiff and appellant.

Jeffrey Lee Sheets, Heritage Place, Minot, ND, for defendant and appellee.

CROTHERS, Justice.

[¶ 1] The City of Minot appeals the district court's order suppressing all evidence in a case involving Corey Keller, who was charged with driving under the influence of intoxicating liquor and possessing a loaded firearm in a motor vehicle. We reverse the district court's order, concluding the law enforcement officer had reasonable and articulable suspicion to stop Keller's vehicle, and we remand for further consideration.

I

[¶ 2] On November 28, 2006, the manager of Wendy's restaurant in Minot reported to the Minot Police Department that an individual driving a blue GMC pick-up truck licensed EIY239 was bothering an employee. Several restaurant employees claimed the individual smelled of alcohol and believed he was intoxicated. Law enforcement officer Cassidy Halseth located the pick-up truck parked by another store. Halseth located Keller inside the store and identified him as the driver. Halseth spoke with Keller and concluded Keller was intoxicated based on his observations that Keller had poor balance, slurred speech, bloodshot eyes and an odor of alcohol about him. Halseth did not perform any field sobriety tests or preliminary breath tests on Keller, but he did recommend to Keller that he not drive in his condition. After the contact with Keller, Halseth waited outside the store for approximately one hour, but did not observe Keller return to his truck.

[¶ 3] Halseth told fellow officer Larry Haug that Keller was intoxicated, and he showed Haug where Keller's pick-up truck was parked. Haug did not observe Keller return to his vehicle, but he later saw the vehicle being driven by a male matching Keller's description. Haug was able to identify Keller's vehicle because he ran the license plate number earlier in the evening; however, Haug could not positively identify Keller as the driver of the vehicle. Haug followed Keller's vehicle, turned on his lights and initiated a traffic stop. Haug observed the vehicle weaving onto the shoulder of the road many times, but this occurred after Haug turned on his lights to initiate the stop.

[¶ 4] Ultimately, Haug arrested Keller for driving under the influence of intoxicating liquor and possessing a loaded firearm in a motor vehicle. A medical technologist at Trinity Medical Center obtained a blood sample from Keller. The lab results showed a blood alcohol concentration of 0.26 percent by weight. Keller was charged with driving under the influence and with possessing a loaded firearm in a motor vehicle.

[¶ 5] On February 13, 2007, Keller filed a motion to suppress all evidence obtained in the November 28, 2006 traffic stop. The district court granted the order, concluding Haug did not have reasonable and articulable suspicion necessary to make the stop under *Anderson v. Dir., N.D. Dep't of Transp.*, 2005 ND 97, ¶ 9, 696 N.W.2d 918. Minot appeals, arguing the district court misinterpreted *Anderson* and failed to sufficiently consider the interaction between Keller and Halseth. Minot contends the interaction between Keller and Halseth, when considered among the totality of circumstances, provided sufficient grounds for the stop.

II

[¶ 6] "Questions of law and the ultimate conclusion about whether the facts support a reasonable and articulable suspicion are fully reviewable on appeal." *State v. Smith*, 2005 ND 21, ¶ 11, 691

N.W.2d 203. A law enforcement "officer must have a reasonable and articulable suspicion that [a driver] has violated or is violating the law" before making an investigative stop. *State v. Graven*, 530 N.W.2d 328, 330 (N.D.1995). "[M]ere curiosity, suspicion, vague hunches, or other non-objective facts will not suffice." *State v. Johnson*, 2006 ND 248, ¶ 9, 724 N.W.2d 129.

[¶ 7] Section 39–08–01, N.D.C.C., states, "A person may not drive . . . upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if: . . . That person is under the influence of intoxicating liquor." Here, each of the two officers observed information sufficient to satisfy one of the two elements of the crime. Halseth observed Keller in an intoxicated state, and Haug observed Keller driving. Neither officer's independent observations created reasonable and articulable suspicion to stop Keller's vehicle.

[¶ 8] The matter before this Court is whether Halseth's uncorroborated communication that Keller was intoxicated, together with Haug's observation of Keller driving, is sufficient to establish reasonable and articulable suspicion to stop the vehicle.

[¶ 9] The United States Supreme Court explored a similar issue in *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). In *Whiteley*, two men were arrested by an officer who relied on a bulletin from another agency describing the men and the car they were driving. *Id.* at 563, 91 S.Ct. 1031. The bulletin indicated there were arrest warrants for the men, but it did not include sufficient underlying information justifying the warrants. *Id.* The warrants were found improperly supported, and there were no facts justifying an arrest without the warrants. *Id.* at 564–65, 91 S.Ct. 1031. The

Court determined the officers were justified in acting on the bulletin alone and should not be subject to civil charges. *See id.* at 568, 91 S.Ct. 1031. However, because neither the issuing agency nor the arresting officers had probable cause, the defendant's Fourth Amendment rights were violated and the exclusionary rule applied. *Id.* at 568–69, 91 S.Ct. 1031.

[¶ 10] The *Whiteley* rule, also known as the collective knowledge doctrine, allows law enforcement officers to rely on information from other officers to establish probable cause. "[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another." *United States v. Hensley*, 469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). *Hensley* held that information from other officers can also be used to establish reasonable and articulable suspicion. *Id.* This Court has found the federal approach persuasive when considering communications between officers. *State v. Miller*, 510 N.W.2d 638, 643 (N.D.1994).

[¶ 11] *Whiteley* establishes that if an officer has probable cause and communicates that fact to a second officer, the second officer also enjoys the benefit of that probable cause. What is not clear from *Whiteley* is whether facts from one officer or agency *may be combined* with facts from a second officer or agency to establish reasonable and articulable suspicion if the facts, uncombined, fall short of this legal standard. Keller's intoxication, alone, is not a criminal act under North Dakota law. *Schwindt v. State*, 510 N.W.2d 114, 117 (N.D.1994). Keller's operation of a vehicle, alone, is not a criminal act. It is only when these two conditions are combined that a criminal violation occurs.

■■ [¶ 12] In answering this question, it is significant that Haug needed to have reasonable and articulable suspicion to stop Keller rather than probable cause. *Graven*, 530 N.W.2d at 330. Reasonable and articulable suspicion is a lesser standard than probable cause, requiring only an objective manifestation that an individual has engaged in unlawful activity. *Lapp v. N.D. Dep't of Transp.*, 2001 ND 140, ¶ 11, 632 N.W.2d 419; *State v. Garrett*, 1998 ND 173, ¶ 29, 584 N.W.2d 502. Tips from known informants who are not otherwise affiliated with law enforcement have been used to justify investigatory traffic stops provided the tips are otherwise reliable. *Gabel v. N.D. Dep't of Transp.*, 2006 ND 178, ¶ 12, 720 N.W.2d 433. It would be illogical for this Court to require independent corroboration of information from police officers, who are presumptively reliable, when not also requiring corroboration of information from non-police informants. *See Miller*, 510 N.W.2d at 641 (Tips on the "high end of the reliability scale" are "sufficient to raise a reasonable suspicion."). In order for knowledge to be imputed from one officer to another, however, the information must actually be communicated to the acting officer in advance of the police action. *Id.* at 643 ("[I]nformation held by other officers but not communicated to the acting officer is not imputed to the acting officer."). The communication requirement prevents unjustified police action from being taken in the hopes it is later validated by tallying the knowledge of every officer and agency involved in the case. *See State v. Mickelson*, 18 Or.App. 647, 526 P.2d 583, 584 (1974); *see, e.g., Salter v. State*, 163 Ind.App. 35, 321 N.E.2d 760, 762 (1975) (finding arrest improper when evidence could not demonstrate that officer possessing knowledge establishing probable cause communicated with the arresting officer prior to arrest).

[¶ 13] The district court suppressed the evidence against Keller after determining the information communicated by Halseth to Haug was not sufficient to establish reasonable and articulable suspicion because Haug did not independently corroborate the information. The district court relied on *Anderson*, which states:

> "We have discussed three situations that provide an officer reasonable and articulable suspicion to stop a vehicle: (1) when the officer relied on a directive or request for action from another officer; (2) when the officer received tips from other police officers or informants, which were then corroborated by the officer's own observations; and (3) when the officer directly observed illegal activity."

2005 ND 97, ¶ 9, 696 N.W.2d 918. *See also State v. Torkelsen*, 2006 ND 152, 718 N.W.2d 22; *Interest of T.J.K.*, 1999 ND 152, 598 N.W.2d 781; *City of Fargo v. Ovind*, 1998 ND 69, 575 N.W.2d 901. Using *Anderson*, the district court determined there are only two ways an officer may use information obtained from another officer to establish reasonable and articulable suspicion: (1) if a directive or request for action is given by another officer and (2) if the information received from other officers is corroborated with personal observations. The district court excluded all evidence from the stop because it found neither a directive nor corroboration. We conclude the district court's interpretation of *Anderson* was too narrow because *Anderson* does not offer an exclusive list and does not require that one officer verify another officer's communication of suspected illegal activity. Rather, officer to officer communications are presumptively reliable. Therefore, observations made by one officer may be communicated to a second officer who, after observing additional conduct, can combine the communicated

observations with his own to thereafter have reasonable articulable suspicion to stop.

### III

[¶ 14] We reverse the district court's order, concluding the observations made by law enforcement officers provided reasonable and articulable suspicion to stop Keller's vehicle, and we remand for further consideration.

[¶ 15] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.