Filed 2/17/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 36

Christopher Anthony Osaba, Plaintiff and Appellant

v.

North Dakota Department

of Transportation, Defendant and Appellee

No. 20110297

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Sonna M. Anderson, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Danny L. Herbel, The Regency Business Center, 3333 East Broadway Avenue, Suite 1205, Bismarck, ND 58501, for plaintiff and appellant; submitted on brief.

Michael T. Pitcher (argued), Assistant Attorney General, Office of Attorney General, 500 North 9th Street, Bismarck, ND 58501-4509, for defendant and appellee.

Osaba v. N.D. Dep’t of Transportation

No. 20110297

Kapsner, Justice.

[¶1] Christopher Osaba appeals from a district court judgment affirming the administrative revocation of his driving privileges for one year following his arrest for driving under the influence (“DUI”).  We conclude testimony was properly admitted to establish probable cause for Osaba’s arrest, and we affirm.

I

[¶2] On March 6, 2011, MedCenter One Hospital security staff called police to report disorderly conduct by an individual “running up and down the hallways punching their signs and damaging property.”  In response to the report, Officer Tim Sass arrived at the hospital, where two security guards were standing at the entrance with Osaba.  Sass stated he asked Osaba for his name, to which Osaba replied, “Joshua.”  Sass noted Osaba’s “speech was a little slurred,” and asked for Osaba’s name again.  Sass stated Osaba did not respond, but Sass was able to identify Osaba from the driver’s license he was carrying.  When Sass began to question Osaba regarding the disorderly conduct report, Sass observed “the odor of alcohol was coming off of his person and his breath.  His eyes appeared to be bloodshot and glossy, and . . . his balance was swaying back and forth.”  Sass noted he asked Osaba how he arrived at the hospital, and Osaba indicated a friend had brought him there.  Sass stated Osaba claimed he was at the hospital to visit a friend named Blake Park; the hospital had no record of a patient by that name, and there was no response to a page for Blake Park.

[¶3] Officers Brocker and Heinert then arrived at the hospital.  While Sass remained with Osaba, Brocker reviewed security video from hospital cameras and reported to Sass that a video showed Osaba driving to the hospital in the truck that was parked in the hospital entranceway.  Sass stated he asked Osaba if his truck was parked in the entranceway of the hospital, and Osaba said it was not.  After checking the license plate of the truck parked in the entranceway, Sass discovered the truck was registered to Osaba and his wife.  Sass stated Osaba continued to assert the truck was not his, claiming it was registered only to his wife.  Sass then placed Osaba under arrest for disorderly conduct.  Sass noted, “As we exited the hospital, I asked if we could have permission to move the truck into an actual parking spot, as we had found keys on his possession[,]” but Osaba did not grant permission.

[¶4] After arriving at the police station, Sass asked Osaba to perform field sobriety tests.  Sass determined Osaba failed various field sobriety tests and asked Osaba to submit to an S-D5 breath screening test.  According to Sass, Osaba agreed but did not provide adequate breath samples on his first two attempts.  Sass stated he informed Osaba that if he failed to provide an adequate breath sample, he would be deemed to have refused the test.  Osaba reportedly did not provide an adequate sample on his third attempt, and Sass concluded Osaba’s actions amounted to a refusal to submit to the test.  Sass then informed Osaba he was also under arrest for DUI and asked Osaba to submit to a chemical intoxilyzer test.  Osaba refused.

[¶5] The North Dakota Department of Transportation (“DOT”) notified Osaba of its intent to revoke his driving privileges, and Osaba requested a hearing.  At an administrative hearing held April 5, 2011, Sass testified regarding Brocker’s statements that a hospital security video showed Osaba driving.  Osaba objected to this testimony as hearsay, and the hearing officer sustained the objection.  Sass also testified as to the basis of his decision to arrest Osaba for DUI, listing contributing factors as “the odor of the alcohol on his breath, . . . his balance, swaying, his bloodshot eyes, and the results of all the standard field sobriety testing[,]” along with Brocker’s statements regarding the video footage.  Osaba again objected to Sass’s testimony regarding Brocker’s statements.  The hearing officer overruled the objection, stating, “For purposes of determining whether or not there’s probable cause to make an arrest, the statement is not hearsay.”  Sass noted he later received a video from the hospital that did not show Osaba driving, but Sass was unsure if the video he viewed was the same video Brocker viewed the night of Osaba’s arrest.  Following the hearing, the hearing officer issued a decision revoking Osaba’s driving privileges for one year.  The hearing officer concluded Osaba’s refusal of the S-D5 test mandated a revocation of his driving privileges and determined Osaba’s refusal of the chemical test provided an independent basis for revoking his driving privileges.

[¶6] Osaba appealed the decision to the district court.  The district court found that because no moving traffic violation had been observed, there was no basis to request Osaba to submit to the S-D5 test.  Although the court concluded Osaba’s license could not be revoked for failing to submit to the S-D5 test, the court determined Sass’s own observations provided sufficient reasonable grounds to believe Osaba was under the influence of intoxicating liquor.  The court upheld the revocation of Osaba’s license, stating, “Once placed under arrest for DUI and given the consent advisory, Mr. Osaba’s refusal to submit to the [chemical test] is an independent ground for the revocation of Mr. Osaba’s license.”

II

[¶7] Osaba argues the hearing officer improperly allowed Sass’s testimony regarding Brocker’s statements, without which there were no reasonable grounds for Sass to believe Osaba had been in actual physical control of a motor vehicle while under the influence of intoxicating liquor.  The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs our review of an administrative agency’s suspension of a driver’s license.  
Engstrom v. N.D. Dep’t of Transp.
, 2011 ND 235, ¶ 6.  We affirm the agency decision unless:

1.  The order is not in accordance with the law.

2.  The order is in violation of the constitutional rights of the appellant.

3.  The provisions of this chapter have not been complied with in the proceedings before the agency.

4.  The rules or procedure of the agency have not afforded the appellant a fair hearing.

5.  The findings of fact made by the agency are not supported by a preponderance of the evidence.

6.  The conclusions of law and order of the agency are not supported by its findings of fact.

7.  The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8.  The conclusions of law and order of the agency do not sufficiently explain the agency’s rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46.  We review the agency’s findings and decisions on appeal, and “the district court’s analysis is entitled to respect if its reasoning is sound.”  
Hawes v. N.D. Dep’t of Transp.
, 2007 ND 177, ¶ 13, 741 N.W.2d 202.

[¶8] The admissibility of evidence in administrative hearings is determined in accordance with the North Dakota Rules of Evidence.  N.D.C.C. § 28-32-24(1).  Evidentiary rulings in administrative hearings are reviewed under the abuse of discretion standard.  
Sonsthagen v. Sprynczynatyk
, 2003 ND 90, ¶ 9, 663 N.W.2d 161.  “An abuse of discretion occurs if a hearing officer acts in an arbitrary, unreasonable, or capricious manner or if the hearing officer misinterprets or misapplies the law.”  
Id.

[¶9] Osaba claims the hearing officer should not have allowed Sass to testify about Brocker’s statements when Sass was discussing his reasons for arresting Osaba for DUI.  Osaba argues such testimony was hearsay because it “was offered to establish the ultimate issue.”  The DOT responds that the knowledge Brocker communicated to Sass was imputed to Sass, and the DOT asserts imputed knowledge is not hearsay.

[¶10] “Hearsay” is defined as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”  N.D.R.Ev. 801(c).  Here, the hearing officer stated the testimony at issue was not hearsay because it was being considered for the limited purpose of determining whether Sass had probable cause to arrest Osaba for DUI.  The hearing officer cited cases from various jurisdictions, concluding “the clear majority of courts deciding [similar] matters h[o]ld the statement from a third party is not hearsay.”

[¶11] In 
City of Minot v. Keller
, 2008 ND 38, 745 N.W.2d 638, we considered whether an officer’s knowledge could be imputed to another officer to establish reasonable and articulable suspicion to stop a vehicle.  There, one officer’s observations of Keller led the officer to conclude that Keller was intoxicated.  
Id.
 at ¶ 2.  The officer relayed his knowledge to a second officer, who later observed Keller driving, stopped the vehicle, and arrested Keller for DUI.  
Id.
 at ¶¶ 3-4.  To decide whether the officers’ observations could be combined to establish reasonable and articulable suspicion, we looked to the United States Supreme Court’s decisions in 
Whiteley v. Warden
, 401 U.S. 560 (1971), and 
United States v. Hensley
, 469 U.S. 221 (1985).  
Id.
 at ¶¶ 9-11.  We noted that in 
Whiteley
, the United States Supreme Court recognized the collective knowledge doctrine, which allows a law enforcement officer to rely on information from another officer to establish probable cause.  
Id.
 at ¶ 10.  We also observed, “
Hensley
 held that information from other officers can also be used to establish reasonable and articulable suspicion.”  
Id.
  We then stated:

Whiteley
 establishes that if an officer has probable cause and communicates that fact to a second officer, the second officer also enjoys the benefit of that probable cause.  What is not clear from 
Whiteley
 is whether facts from one officer or agency 
may be combined
 with facts from a second officer or agency to establish reasonable and articulable suspicion if the facts, uncombined, fall short of this legal standard.

Id.
 at ¶ 11.  In concluding one officer’s knowledge may be imputed to another officer, we noted “the information must actually be communicated to the acting officer in advance of the police action.”  
Id.
 at ¶ 12.  We held that “officer to officer communications are presumptively reliable.  Therefore, observations made by one officer may be communicated to a second officer who, after observing additional conduct, can combine the communicated observations with his own to thereafter have reasonable articulable suspicion to stop.”  
Id.
 at ¶ 13.

[¶12] We discern no reason the 
Keller
 rule should not be extended to probable cause determinations.  In this case, Brocker actually communicated his knowledge of the hospital security video to Sass before Sass arrested Osaba for DUI.  Brocker’s communication was presumptively reliable, and his knowledge of the video was imputed to Sass.  Sass could then combine the communicated observation with his own observations of Osaba to establish probable cause to arrest Osaba for DUI.  Sass testified he detected the odor of alcohol on Osaba, observed Osaba’s bloodshot and glossy eyes, noticed Osaba swaying, and determined Osaba failed field sobriety tests.  Sass’s observations indicated Osaba was intoxicated; Brocker’s observations of the security video, which were imputed to Sass, demonstrated Osaba’s operation of a vehicle.  The combination of Sass’s observations and the imputed knowledge from Brocker gave Sass probable cause to believe Osaba had driven under the influence.  Sass’s testimony regarding Brocker’s statements was offered to establish Sass’s knowledge and observations at the time of Osaba’s arrest.  The testimony was not offered to prove that Osaba had been driving under the influence, and Osaba’s license was not revoked for that reason.  Rather, Osaba refused to submit to chemical testing.  Because Sass’s testimony regarding Brocker’s statements was offered to establish whether Sass had probable cause to arrest Osaba for DUI, the hearing officer did not abuse his discretion in allowing the testimony.

[¶13] We do not hold that a defendant may not challenge the veracity of a statement one officer communicates to another.  Here, Sass testified that Brocker told him a hospital security video showed Osaba driving to the hospital in the truck parked in the hospital entranceway.  Sass stated he did not view the video when he was at the hospital.  Sass testified he later viewed a video sent to him by the hospital, and that video did not show Osaba driving.  At the administrative hearing, counsel for Osaba asked Sass, “[I]s it fair to say that Officer Brocker was lying to you?”  Sass responded, “No.  I can’t speak for what he saw.”  Sass acknowledged the video he received from the hospital did not show Osaba driving, but he added, “That’s assuming that they even sent me the correct camera, the correct video, the correct angle.”  The hearing officer was able to evaluate the testimony before him, and we conclude it was not an abuse of discretion to allow Sass’s testimony regarding Brocker’s statements for purposes of determining probable cause for Osaba’s arrest.

III

[¶14] Osaba’s other arguments are either unnecessary to our decision or without merit.  The district court judgment affirming the administrative revocation of Osaba’s driver’s license is affirmed.

[¶15] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.