2016 ND 164

**Tyler Dale ELL, Petitioner and Appellant**

**v.**

**DIRECTOR, Department of Transportation, Respondent and Appellee.**

**No. 20160068.**

Supreme Court of North Dakota.

Aug. 17, 2016.

Thomas M. Tuntland, Mandan, N.D., for petitioner and appellant.

Michael T. Pitcher, Assistant Attorney General, Office of the Attorney General, Bismarck, N.D., for respondent and appellee.

KAPSNER, Justice.

[¶ 1] Tyler Ell appeals from a district court judgment affirming a Department of Transportation decision suspending his

driving privileges for 91 days. Ell argues the Department erred in suspending his license because there was no evidence establishing officers had reasonable suspicion to stop his vehicle, his continued seizure after the purpose of the initial traffic stop was complete violated his constitutional rights, and the Intoxilyzer breath test was not fairly administered. We reverse, concluding the hearing officer erred in admitting the Intoxilyzer results.

I

[¶ 2]  On September 5, 2015, Ell's vehicle was stopped for speeding by a McLean County Sherriff's Deputy, Corporal Cody Meadows. Meadows noted an odor of alcohol and Ell admitted he had been drinking alcohol. Meadows contacted Deputy William Janisch for assistance with the stop. Janisch arrived at the scene of the stop and Meadows requested he speak with the driver and conduct the field sobriety tests. Janisch took over the investigation and conducted field sobriety tests and an onsite screening test. The onsite screening test showed Ell had an alcohol concentration of 0.144 percent. Janisch arrested Ell for driving under the influence of intoxicating liquor and requested Ell submit to a breath test. Ell consented to take the test, and a breath test was administered using the Intoxilyzer 8000. The test result showed Ell had an alcohol concentration of 0.158 percent by weight. Ell was issued a report and notice, informing him of the Department's intent to suspend his driving privileges. Ell requested an administrative hearing.

[¶ 3]  At the October 2015 hearing, a number of exhibits were offered and admitted into evidence, including the result of the breath test and a document outlining the approved method to conduct breath tests with the Intoxilyzer 8000. Janisch testified that he administered the breath test according to the approved method.

[¶ 4]  The hearing officer ordered Ell's driving privileges be suspended for 91 days. The hearing officer found Janisch was trained and certified to administer the Intoxilyzer 8000, the test was administered fairly and in accordance with the approved method, and the test result showed Ell had an alcohol concentration of 0.158 percent. Ell appealed the hearing officer's decision, and the district court affirmed.

II

[¶ 5]  On appeal from a district court's decision reviewing the decision of an administrative agency, we review the agency's order in the same manner as the district court. N.D.C.C. § 28–32–49. We must affirm the agency's decision, unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommenda-

tions by a hearing officer or an administrative law judge. N.D.C.C. § 28–32–46.

[¶ 6] We give deference to the agency's decision and determine "only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight· of the evidence from the entire record." *Filkowski v. Dir., N.D. Dep't of Transp.*, 2015 ND 104, ¶ 6, 862 N.W.2d 785 (quoting *Barros v. N.D. Dep't of Transp.*, 2008 ND 132, ¶ 8, 751 N.W.2d 261). A hearing officer's evidentiary rulings are reviewed under the abuse of discretion standard. *Filkowski*, at ¶ 6. Hearing officers abuse their discretion if they act in an arbitrary, unreasonable, or unconscionable manner, or if they misinterpret or misapply the law. *Id.* Questions of law are fully reviewable. *Id.*

### III

[¶ 7] Ell argues there was no admissible evidence from which the hearing officer could determine whether there was reasonable suspicion to stop his vehicle. He contends Corporal Meadows stopped his vehicle, but did not testify at the hearing, and the hearing officer erred in allowing Deputy Janisch to testify about statements Meadows made about the stop.

[¶ 8] "To make a legal investigative stop of a vehicle, an officer must have a reasonable and articulable suspicion the motorist has violated or is violating the law." *Herrman v. Dir., N.D. Dep't of Transp.*, 2014 ND 129, ¶ 9, 847 N.W.2d 768 (quoting *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478). Whether reasonable suspicion exists is based on the totality of the circumstances and does not require an officer to see a motorist violating a traffic law or rule. *Pesanti v. N.D. Dep't of Transp.*, 2013 ND 210, ¶ 9, 839 N.W.2d 851. The reasonable suspicion standard is an objective standard, which requires the court to determine whether a reasonable person in the officer's position would have been justified by some objective manifestation to suspect that the law was or was about to be violated. *Id.* "Observed traffic violations provide officers with the requisite suspicion for conducting investigatory stops." *Herrman*, at ¶ 9 (quoting *State v. Bachmeier*, 2007 ND 42, ¶ 6, 729 N.W.2d 141).

[¶ 9] The hearing officer found Corporal Meadows informed Deputy Janisch that he stopped Ell's vehicle for speeding. Janisch testified that Meadows contacted him for assistance with a traffic stop and Meadows said he stopped Ell for speeding. Ell objected to Janisch's testimony about Meadows' statements, arguing the testimony was hearsay and should be excluded. The hearing officer overruled the objection and allowed the testimony.

[¶ 10] One officer's knowledge may be imputed to another officer to establish reasonable suspicion or probable cause. *Osaba v. N.D. Dep't of Transp.*, 2012 ND 36, ¶ 11, 812 N.W.2d 440. We have held an officer may testify about imputed knowledge, including statements another officer made when the testimony about the statements is offered to establish probable cause or reasonable suspicion because the testimony is offered to establish the officer's knowledge and observations at the time of the stop or arrest. *Id.* at ¶ 12. We have also said "officer to officer communications are presumptively reliable." *City of Minot v. Keller*, 2008 ND 38, ¶ 13, 745 N.W.2d 638. The hearing officer did not abuse her discretion by allowing Janisch to testify about Meadows' statements. There was sufficient evidence presented for the hearing officer to determine that reasonable suspicion existed justifying the stop of Ell's vehicle. The evidence in the

record supports the hearing officer's findings.

## IV

[¶ 11] Ell argues the length of his detention constituted an unreasonable seizure. He contends that even if he was stopped for speeding, his continued seizure while waiting for Deputy Janisch to arrive at the scene of the stop constituted an "unreasonable seizure" and violated his constitutional rights. He claims there was no admissible evidence about the reasons for his continued detention.

[¶ 12] "An officer may detain an individual at the scene of a traffic stop for a reasonable period of time necessary for the officer to complete his duties resulting from the traffic stop." *State v. Franzen*, 2010 ND 244, ¶ 8, 792 N.W.2d 533. A person's Fourth Amendment rights are violated by the continued detention after the purposes of the initial traffic stop are completed, unless the officer develops reasonable suspicion that other criminal activity is afoot, then the officer may expand the scope of the stop to address that suspicion. *Id.* at ¶ 9.

[¶ 13] The hearing officer found Corporal Meadows informed Deputy Janisch that he had observed an odor of alcohol from the vehicle and that Ell admitted to drinking. The hearing officer also found Janisch observed an odor of alcohol from the vehicle, Ell told Janisch he had consumed three beers, and Janisch noted Ell had glossy eyes and displayed poor balance upon exiting the vehicle.

[¶ 14] The evidence supports the hearing officer's findings. Deputy Janisch testified he responded to Corporal Meadows' request for assistance, Meadows told Janisch he noted an odor of alcohol while talking to Ell, Ell admitted he had been drinking, and Meadows requested Janisch finish the investigation. Janisch testified that he spoke to Ell and noted that Ell smelled like alcohol, his eyes were glossy, and he had poor balance. The officers had reasonable suspicion that further criminal activity was afoot and the scope of the stop was expanded to address that suspicion. The seizure was not unreasonable and Ell's Fourth Amendment rights were not violated.

## V

[¶ 15] Ell argues the Intoxilyzer breath test was not fairly administered. He contends the approved method to conduct a breath test requires the Intoxilyzer 8000 be installed by a field inspector and there was no evidence establishing compliance with this part of the approved method.

[¶ 16] Whether a breath test was fairly administered is a preliminary question of admissibility left to the hearing officer's discretion. *See Filkowski*, 2015 ND 104, ¶ 12, 862 N.W.2d 785.

[¶ 17] Section 39–20–07, N.D.C.C., governs the admission of a chemical test result and allows the use of certified documents to establish the evidentiary foundation for the result. The result of the chemical analysis of a breath test must be received in evidence when it is shown:

> the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee.

N.D.C.C. § 39–20–07(5).

[¶ 18] We have said four foundational elements must be documented or demonstrated for the admission of the test result:

(1) the sample must be properly obtained, (2) the test must be fairly administered, (3) the method and devices used to test the sample must be approved by the director of the state crime laboratory or the director's designee, and (4) the ... test must be performed by an authorized person or by one certified by the director of the state crime laboratory or the director's designee as qualified to perform it.

*Filkowski*, 2015 ND 104, ¶ 12, 862 N.W.2d 785. The statute eases the Department's burden in laying an evidentiary foundation for a chemical test result by "allowing the admittance of scrupulously completed documents in lieu of lengthy testimony ... [,]" and also ensures the test was fairly administered. *Frank v. Dir., N.D. Dep't of Transp.*, 2014 ND 158, ¶ 10, 849 N.W.2d 248; *see also Lee v. N.D. Dep't of Transp.*, 2004 ND 7, ¶ 10, 673 N.W.2d 245.

▪ [¶ 19] The scientific accuracy of the test cannot be established without expert testimony if there is not strict compliance with the approved method. *Lee*, 2004 ND 7, ¶ 12, 673 N.W.2d 245. "If the documentary evidence and testimony does not show scrupulous compliance with the methods approved by the director of the state crime laboratory or the director's designee, the evidentiary shortcut provided by N.D.C.C. § 39–20–07 cannot be used and fair administration of the test must be established through expert testimony." *State v. Van Zomeren*, 2016 ND 98, ¶ 10, 879 N.W.2d 449.

[¶ 20] Here, a certified copy of the approved method to conduct a breath test with the Intoxilyzer 8000 was admitted into evidence at the hearing. The approved method for the breath test states the first step in instrument preparation for a test is that "[t]he Intoxilyzer 8000 must be installed by a Field Inspector prior to use." Deputy Janisch testified that he complied with the approved method to conduct the breath test, but he was also asked whether he saw a field inspector install the device and he testified that he was not working when the device was installed. A certified list of approved chemical testing devices was also admitted at the hearing. The list of approved testing devices showed the Intoxilyzer 8000 used in this case was inspected on April 9, 2015, at the Office of the Attorney General, Crime Lab Division. The certified list also states "the location of the device at the time of inspection does not restrict its use at other locations." The Department argues this exhibit established that the inspection of the Intoxilyzer device at the crime lab was sufficient for compliance with the approved method and that relocation of the device did not adversely impact the test result. It is not clear from the approved method or from any other evidence in the record that inspection of a testing device is the same as installation of the device. The exhibit established the location of the inspection of the device, but it did not establish that the device was installed by a field inspector.

▪ [¶ 21] The approved method to conduct breath tests with the Intoxilyzer 8000 requires the device to be installed by a field inspector before use. There was no documentary or testimonial evidence that the device was installed by a field inspector. "Without strict compliance with the approved method, the scientific accuracy of the test cannot be established without expert testimony." *Lee*, 2004 ND 7, ¶ 12, 673 N.W.2d 245 (quoting *Ringsaker v. Dir., N.D. Dep't of Transp.*, 1999 ND 127, ¶ 8, 596 N.W.2d 328). The documentary evidence and testimony did not show scrupulous compliance with the approved method to conduct the breath test.

[¶ 22] Without evidentiary or testimonial proof of compliance with the approved

method, the Department failed to make a prima facie showing the approved method was followed, and the foundational elements of N.D.C.C. § 39–20–07 for the evidentiary shortcut were not met. The Department did not present expert testimony to establish the test was fairly administered. Proper foundation for the Intoxilyzer test result was not laid. We conclude the hearing officer misapplied the law and abused her discretion in admitting the breath test result. Because the hearing officer erred in admitting the breath test result, we conclude the hearing officer's findings are not supported by a preponderance of the evidence and the decision is not in accordance with the law.

## VI

[¶ 23] We reverse the district court judgment.

[¶ 24] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.