Crothers, Justice, specially concurring.
 

 [¶17] I agree with the result reached by the majority based on how the United States Supreme Court currently interprets the Fourth Amendment law of reasonable articulable suspicion in driving under the influence cases. I respectfully do not agree with the majority if they are engrafting that Fourth Amendment analysis onto our state constitutional analysis.
 
 See
 
 Majority opinion ¶ 7 (referencing both the Fourth Amendment of the United States Constitution and Article I, section 8, of the North Dakota Constitution ). I also question whether our decision in
 
 State v. Miller
 
 ,
 
 510 N.W.2d 638
 
 (N.D. 1994), has lingering viability in this area of law, and whether, as long as this Court cohesively applies Fourth Amendment analyses to search and seizure claims made under our State Constitution,
 
 Miller
 
 should be overruled and not merely distinguished.
 

 I
 

 [¶18] This Court recently discussed reasonable articulable suspicion jurisprudence in the realm of driving under the influence stops.
 
 See
 

 State v. Knox
 
 ,
 
 2016 ND 15
 
 , ¶ 7,
 
 873 N.W.2d 664
 
 . As discussed in
 
 Knox
 
 , in 2016 the United States Supreme Court changed the legal landscape by permitting automobile stops based on anonymous calls to 911 operators about ongoing offenses such as driving under the influence.
 
 See
 

 Navarette v. California
 
 ,
 
 572 U.S. 393
 
 ,
 
 134 S.Ct. 1683
 
 , 1690-91,
 
 188 L.Ed.2d 680
 
 (2014).
 

 [¶19] In
 
 Navarette
 
 , the Supreme Court held information from an anonymous 911 caller, without more, was sufficiently reliable to provide the police with reasonable suspicion to justify an investigatory stop of a vehicle matching the caller's description. Even though the officer did not observe any suspicious conduct before stopping the vehicle, the Court held the information from the 911 call was reliable because the caller claimed to be an eyewitness to a traffic offense that they concluded was indicative of impaired driving.
 

 Id.
 

 at 1689
 
 . In doing so, the Court narrowed its focus to "whether the 911 caller's report of being run off the roadway created reasonable suspicion of an ongoing crime such as drunk driving as opposed to an isolated episode of past recklessness."
 

 Id.
 

 at 1690
 
 .
 

 [¶20] The expansion in
 
 Navarette
 
 of what constitutes reasonable articulable suspicion to stop a suspected impaired driver seemingly cannot be reconciled with this Court's holding in
 
 Miller
 
 . The caller in
 
 Miller
 
 was known to dispatch, and that information could have been imputed to officers on the scene.
 

 [1]
 

 [¶21] Officers on the scene in
 
 Miller
 
 could have and no doubt did interview "Jody with Wendy's," just like officers here interviewed the caller from Taco John's. Thus, I question whether we should struggle to distinguish
 
 Miller
 
 based on the facts here, instead of overruling
 
 Miller
 
 based on legal developments since 1994. If we followed that course, our attention would instead focus on whether whoever constitutes law enforcement in a particular case had sufficiently reliable information (directly or by imputation) to make an investigative stop.
 

 II
 

 [¶22] As discussed above, the United States Supreme Court's decision in
 
 Navarette
 
 changed search and seizure analysis, at least as applied to driving under the influence or continuing violation cases.
 
 Navarette
 
 ,
 
 134 S.Ct. at
 
 1690 n.2 ("Because we conclude that the 911 call created reasonable suspicion of an ongoing crime, we need not address under what circumstances a stop is justified by the need to investigate completed criminal activity."). Traditionally, this Court has applied an identical search and seizure interpretation to the Fourth Amendment of the United States Constitution and Article I, section 8 of the North Dakota Constitution. However, separate treatment under each is permissible:
 

 "It is axiomatic our state constitution may provide greater protections than its federal counterpart.
 

 "Both parties submitted well-developed briefs discussing whether Article I, Section 8 of the North Dakota Constitution affords [defendant] greater protection than provided by the Fourth Amendment to the United States Constitution. However, we need not decide whether to apply the state and federal constitutions differently because this is not a case where we would reach a different result. In this case, where the distinction is merely between the arrest of a person in
 the car and an arrest of a person recently vacating the car, we refuse to apply the North Dakota Constitution differently than the Federal Constitution."
 

 State v. Wanzek
 
 ,
 
 1999 ND 163
 
 , ¶¶ 19-20,
 
 598 N.W.2d 811
 
 (citations omitted).
 

 [¶23] As long as we interpret the North Dakota constitutional provision the same as the Fourth Amendment, we are bound by the United States Supreme Court's decision in
 
 Navarette
 
 . However, while not a question presented in this case, the
 
 Navarette
 
 dissent raises legitimate concerns about its majority opinion. Those concerns should make us at least question, in an appropriate case where we were asked, whether we should decouple our federal and state constitutional analysis in the area of driving under the influence investigative stops. If we chose that direction, we would not be alone in doing so.
 
 See, e.g.
 
 ,
 
 Commonwealth v. Depiero
 
 ,
 
 473 Mass. 450
 
 ,
 
 42 N.E.3d 1123
 
 , 1128 (2016) (Under state constitutional analysis,
 
 Navarette
 
 not followed because "we are not inclined at this time to attribute veracity to all 911 callers.").
 

 [¶24] Daniel J. Crothers
 

 Jerod E. Tufte
 

 Jon J. Jensen
 

 Gerald W. VandeWalle, C.J.
 

 I use the term "imputed" in the general sense. Our cases variously use terms and phrases to describe information passing between or credited to other law enforcement officials. In
 
 State v. Mische
 
 ,
 
 448 N.W.2d 412
 
 , 413 (N.D. 1989), the Court discussed the "fellow officer" or "collective knowledge" rule. This Court subsequently seems to have developed two branches of that concept. One permits an officer to direct another officer to take action.
 
 See, e.g.
 
 ,
 
 State v. Kenner
 
 ,
 
 1997 ND 1
 
 , ¶ 11,
 
 559 N.W.2d 538
 
 ("Where one officer relays a directive or request for action to another officer without relaying the underlying facts and circumstances, the directing officer's knowledge is imputed to the acting officer." (citations omitted));
 
 State v. Boline
 
 ,
 
 1998 ND 67
 
 , ¶ 37,
 
 575 N.W.2d 906
 
 (same);
 
 City of Devils Lake v. Lawrence
 
 ,
 
 2002 ND 31
 
 , ¶ 9,
 
 639 N.W.2d 466
 
 (same);
 
 State v. Smith
 
 ,
 
 2005 ND 21
 
 , ¶ 13,
 
 691 N.W.2d 203
 
 (same);
 
 State v. Torkelsen
 
 ,
 
 2006 ND 152
 
 , ¶ 12,
 
 718 N.W.2d 22
 
 (same). In these cases, the question becomes whether the directing officer had sufficient evidence to take the directed action.
 
 United States v. Hensley
 
 ,
 
 469 U.S. 221
 
 ,
 
 105 S.Ct. 675
 
 ,
 
 83 L.Ed.2d 604
 
 (1985).
 

 The other branch allows imputation of knowledge between officers but requires actual communication of the information before the acting officer takes action.
 
 State v. Miller
 
 ,
 
 510 N.W.2d 638
 
 , 643 (N.D. 1994) ("We have found no law to support the proposition that information known to the dispatcher but not communicated to the investigating officer nevertheless should be imputed to the officer.");
 
 Gabel v. North Dakota Dep't of Transp.
 
 ,
 
 2006 ND 178
 
 , ¶ 11,
 
 720 N.W.2d 433
 
 ("We have upheld investigatory stops of vehicles when the stopping officer received information of illegal activity from other officers and the officer corroborated the tip with personal observations.") (citing
 
 State v. Kenner
 
 ,
 
 1997 ND 1
 
 , ¶ 12,
 
 559 N.W.2d 538
 
 );
 
 City of Minot v. Keller
 
 ,
 
 2008 ND 38
 
 , ¶ 12,
 
 745 N.W.2d 638
 
 ("The communication requirement prevents unjustified police action from being taken in the hopes it is later validated by tallying the knowledge of every officer and agency involved in the case." (citations omitted));
 
 Ell v. Director
 
 ,
 
 2016 ND 164
 
 , ¶ 10,
 
 883 N.W.2d 464
 
 ("[A]n officer may testify about imputed knowledge, including statements another officer made when the testimony about the statements is offered to establish probable cause or reasonable suspicion because the testimony is offered to establish the officer's knowledge and observations at the time of the stop or arrest. We have also said 'officer to officer communications are presumptively reliable.' ") (citations omitted).