Filed 6/26/08 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2008 ND 132

Christopher Barros, Petitioner and Appellant

v.

North Dakota Department 

of Transportation, Respondent and Appellee

No. 20080066

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Kelly M. Armstrong, Reichert Armstrong Law Office, 513 Elks Drive, Dickinson, N.D. 58601, for petitioner and appellant.

Douglas B. Anderson, Assistant Attorney General, Office of Attorney General, 500 North Ninth Street, Bismarck, N.D. 58501-4509, for respondent and appellee.

Barros v. N.D. Department of Transportation

No. 20080066

Sandstrom, Justice.

[¶1] Christopher Barros appeals a district court judgment affirming an administrative hearing officer’s decision to suspend his driving privileges for 91 days following his arrest for driving under the influence of intoxicating liquor.  We affirm.

I

[¶2] On October 19, 2007, Officers Michael Kapella and William Stepp of the Mandan Police Department arrested Barros for being in actual physical control of a vehicle while under the influence of intoxicating liquor.  Barros was taken to the Morton County Jail, where a blood test was administered.  The blood test indicated Barros had an alcohol concentration of 0.13 percent by weight.  Barros requested an administrative hearing following the arrest.

[¶3] At the hearing, Barros argued that chain of custody for the blood sample was not sufficiently established.  Form 104, which contains the blood test results, lists two different dates regarding when the blood was collected.  The nurse who drew the blood wrote “10/19/07” as the date the specimen was obtained.  In the “For Laboratory Use” portion of the form, Cindy Leingang, who certified that she received the blood specimen, wrote “date of sample collection on tube label 10/18/07” in the space labeled “Remarks.”  Officer Kapella acknowledged the different dates on Form 104, testifying the reason for the difference in dates was “[p]robably bad handwriting on my part, obviously.”  He testified he filled out the label that was fixed over the tube containing the blood sample drawn from Barros.  He testified he intended the date on the tube label to be “10/19/07,” but it was possible he wrote “10/18/07” by mistake, because he has bad handwriting.  He testified he did not do any more blood draws on October 18 or October 19; Barros’s was the only blood draw he was involved with.  He testified he completed the specimen submitter’s checklist portion of Form 104, which listed “10/19/07” as the date the blood sample was obtained.  He testified he completed all of the check-marked items on the checklist.  He testified he completed the top portion of Form 104, which contains the subject’s name, the specimen submitter’s name, the specimen collector’s certification, and an area labeled “For Laboratory Use,” which contains the specimen receiver’s certification.  He testified he was present when the nurse who administered the blood draw completed the blood specimen collector portion of Form 104.  The nurse wrote “10/19/07” as the date the specimen was obtained.  He testified that the sample was placed in a protective container and that he kept the container with him at all times until he dropped it off in the mailbox to be sent out to the lab for testing.

[¶4] Officer Stepp testified he was also present when the blood sample was taken.  He testified the blood was drawn on October 19, 2007.  He testified he observed Officer Kapella complete the specimen submitter’s checklist and affix the label over the tube containing Barros’s blood specimen approximately a minute or so after the blood was drawn.

[¶5] Barros objected to the admittance of Form 104, arguing that chain of custody had not been established.  The hearing officer overruled the objection, and Form 104 was admitted.  Barros’s driving privileges were suspended for 91 days.  The district court affirmed the hearing officer’s decision.

[¶6] Barros timely requested an administrative hearing under N.D.C.C. § 39-20-05.  The hearing officer had jurisdiction under N.D.C.C. § 39-20-05.  The notice of appeal from the Department of Transportation’s decision to the district court was properly filed within seven days under N.D.C.C. § 39-20-06.  The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 39-20-06.  Barros filed a timely notice of appeal from the district court judgment under N.D.C.C. § 28-32-49.  This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28-32-49.

II

[¶7] The review of a decision to suspend a driver’s license is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32.  
Leno v. Dep’t of Transp.
, 2008 ND 10, ¶ 6, 743 N.W.2d 794.  The district court, under N.D.C.C. § 28-32-46, and this Court, under N.D.C.C. § 28-32-49, must affirm an agency’s order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency’s rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46.

[¶8] We discussed our standard of review of an administrative agency’s decision in 
Kiecker v. N.D. Dep’t of Transp.
, 2005 ND 23, ¶ 8, 691 N.W.2d 266.

On appeal, courts “must review an appeal from the determination of an administrative agency based only on the record filed with the court.”  When reviewing an administrative agency’s factual findings, “we do not make independent findings of fact or substitute our judgment for that of the agency.”  We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.  “An agency’s decisions on questions of law are fully reviewable.”

Id.
 (citations omitted).

III

[¶9] On appeal, Barros argues the blood sample he submitted was inadmissible because the Department failed to present evidence establishing a chain of custody for the blood sample.  Subsections (5), (8), and (10) of section 39-20-07, N.D.C.C., govern the admissibility of blood sample test results:

Interpretation of chemical tests.  Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof, evidence of the amount of alcohol, drugs, or a combination thereof in the person’s blood at the time of the act alleged as shown by a chemical analysis of the blood, breath, saliva, or urine is admissible.  For the purpose of this section:

. . . .

5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director’s designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director’s designee.  The director of the state crime laboratory or the director’s designee is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the person requested to take the chemical test.

. . . .

8. A certified copy of the analytical report of a blood, urine, or saliva analysis referred to in subsection 5 and which is issued by the director of the state crime laboratory or the director’s designee must be accepted as prima facie evidence of the results of a chemical analysis performed under this chapter.  The certified copy satisfies the directives of subsection 5.

. . . .

10. A signed statement from the individual medically qualified to draw the blood sample for testing as set forth in subsection 5 is prima facie evidence that the blood sample was properly drawn and no further foundation for the admission of this evidence may be required.

[¶10] Form 104, drafted by the State Toxicologist, contains directions and a checklist to ensure proper collection and submission of blood samples.  
City of West Fargo v. Hawkins
, 2000 ND 168, ¶ 16, 616 N.W.2d 856.  Fair administration of a blood test can be established by proof that those directions have been scrupulously followed; however, “scrupulous” compliance does not mean “hypertechnical” compliance.  
Id.

[¶11] Form 104 has two primary functions.  First, the certification of the blood specimen collector “ensures that the scientific accuracy and reliability of the test are not affected by improper collection or preservation of the blood sample.”  
State v. Jordheim
, 508 N.W.2d 878, 883 (N.D. 1993) (quoting 
State v. Schwalk
, 430 N.W.2d 317, 322 (N.D. 1988)).  “Second, the certifications of the specimen submitter and receiver provide ‘an evidentiary shortcut for establishing chain of custody’ by ensuring the specimen is received in the same condition as it was submitted.”  
Jordheim
, at 883 (quoting 
Schwalk
, at 322).

[¶12] Barros does not argue the blood test was scientifically inaccurate.  He argues chain of custody is lacking because of the different dates listed on Form 104.  He argues Form 104 is inadmissible without additional evidence establishing a chain of custody.  “While it is not necessary for the State to call all persons who have handled the blood sample in order to introduce the test results, it is incumbent upon the State to show that the sample tested is the same one originally drawn from the defendant.”  
State v. Reil
, 409 N.W.2d 99, 104 (N.D. 1987).

[¶13] Officer Kapella acknowledged the different dates on Form 104, testifying the difference may have been due to his poor handwriting.  He testified he followed all of the instructions on the specimen submitter’s checklist portion of Form 104.  He testified he completed the top portion of Form 104, which contained the names of both Barros and Kapella.  He testified he observed the nurse administer the blood test.  He testified he placed the label on the vial containing the blood sample.  He testified that the sample was placed in a protective container and that he kept the container with him at all times until he dropped it off in the mailbox to be sent to the lab for testing.  He testified he was not involved in any other blood draws on October 18 or 19; Barros’s was the only one.  Officer Stepp also testified he observed the blood test being administered.  He testified he observed the nurse draw the blood and Officer Kapella complete the specimen submitter’s checklist.  He testified this was all done on October 19, 2007.

[¶14] Officer Kapella testified he followed all of the instructions on the specimen submitter’s checklist.  The instructions on the checklist are as follows:

[1.] Used an Intact Kit.

[2.] Affixed Completed Specimen Label/Seal Over the Top and Down the Sides of the Blood Tube.

[3.] Placed the Blood Tube Inside the Blood Tube Protector and Then Placed it in the Plastic Bag Provided. (
Do Not Remove Liquid Absorbing Sheet
)

[4.] Placed the Plastic Bag and Completed Top Portion of This Form in the Kit Box and Closed it.

[5.] Affixed Tamper-Evident Kit Box Shipping Seal on Kit Box.

Instruction 4 indicates the top portion of Form 104 is placed in the kit box with the blood specimen.  Barros’s name and Officer Kapella’s name were both contained on the top portion of the form, along with Leingang’s certification that she received the blood specimen.  Leingang also assigned a “Laboratory Case Number” to the specimen, which corresponded with the case number on the Office of Attorney General, Crime Laboratory Division’s Analytical Report certifying Barros had a blood alcohol concentration of 0.13 percent by weight.  The information on the top portion of Form 104, Officer Kapella’s testimony regarding his handling of the blood sample, and Officer Stepp’s testimony were sufficient to clear up any chain of custody concerns.  We conclude a reasoning mind could have reasonably found that a sufficient chain of custody was established and that Barros’s blood was the blood tested in this case.

[¶15] Barros points to cases in which this Court has held blood alcohol test results were inadmissable when the State failed to prove chain of custody either through compliance with the directions on Form 104 or through other evidence.  
See
 
State v. Nygaard
, 426 N.W.2d 547 (N.D. 1988); 
State v. Wright
, 426 N.W.2d 3 (N.D. 1988); 
Reil
, 409 N.W.2d 99.  This case, however, differs from those cases.  In 
Nygaard
, 426 N.W.2d at 549-550, and 
Wright
, 426 N.W.2d at 5, the arresting officer failed to properly seal and label the vial as required in the directions for sample collection and submission on Form 104, and no testimony was offered to verify that the blood tested was the same blood collected.  In 
Reil
, 409 N.W.2d at 101-102, the arresting officer did not testify as to the procedures used to preserve the blood sample, nor did he testify as to its handling and mailing.  Neither of those facts was present in this case.  Officer Kapella testified he followed all of the directions on Form 104.  He also testified as to the handling and mailing of the blood sample.  Officer Kapella’s testimony, in addition to the other evidence discussed above, was sufficient to clear up any concerns regarding chain of custody.

IV

[¶16] The district court’s judgment is affirmed.

[¶17] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.