2015 ND 104

**Michael Dale FILKOWSKI, Appellant**

v.

**DIRECTOR, NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Appellee.**

No. 20140290.

Supreme Court of North Dakota.

April 28, 2015.

Michael R. Hoffman, Bismarck, N.D., for appellant.

Douglas B. Anderson, Office of Attorney General, Bismarck, N.D., for appellee.

CROTHERS, Justice.

[¶ 1] Michael Filkowski appeals from a district court judgment affirming the Department of Transportation hearing officer's decision suspending his driving privileges for 91 days. We affirm, concluding the Department had authority to suspend Filkowski's driving privileges and the hearing officer did not err in admitting the analytical report containing the results of Filkowski's blood test.

I

[¶ 2] On October 5, 2013, McKenzie County Deputy Sheriff Travis Bateman stopped Filkowski's vehicle after he observed the vehicle weave, leave the roadway on a curve and cross over the center line and into the lane for oncoming traffic. When Bateman approached the vehicle, he observed an odor of alcohol, noted Filkowski had bloodshot watery eyes and slurred speech. Highway Patrol Trooper Chelsey Schatz arrived at the scene of the stop and took over the investigation. Schatz noticed an odor of alcohol and Filkowski's speech was mumbled and slurred. Filkowski had difficulty exiting his vehicle, and Schatz noted his walking was erratic. Filkowski failed the field sobriety tests. Schatz read him the implied consent advisory, and Filkowski agreed to take an onsite screening test. The test was administered and indicated a 0.151 alcohol concentration. Filkowski was arrested for driving under the influence of alcohol and was informed of the implied consent advisory. He agreed to take a chemical blood test. A blood sample was collected and submitted to the state crime laboratory. The test results showed an alcohol concentration of 0.166 g/100ml.

[¶ 3] Filkowski requested an administrative hearing, arguing the Department did not have jurisdiction to suspend his license because a portion of Form 104, the blood collection and submission form, was not forwarded to the Department's director. Filkowski also objected to the admission of the analytical report of the blood test because it used the word "ethanol," which did not comply with the statute defining alcohol concentration. He also claims the Department failed to show the approved method for conducting blood analysis was used and no evidence showed who performed the blood-alcohol analysis.

[¶ 4] The hearing officer admitted the analytical report and foundational documents and suspended Filkowski's license for 91 days. The hearing officer found the blood sample was submitted to the state crime laboratory according to approved procedure, the blood sample was analyzed by a qualified analyst on an approved device and according to the approved method, the test was fairly administered and the test results showed an alcohol concentration of 0.166 g/100ml, which exceeded the legal limit. Filkowski appealed and

the district court affirmed the hearing officer's decision.

## II

[¶ 5] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs our review of a hearing officer's decision suspending a driver's license. *Barros v. N.D. Dep't of Transp.*, 2008 ND 132, ¶ 7, 751 N.W.2d 261. We must affirm the agency's order unless:

"1. The order is not in accordance with the law.

2. The order is in violation of the, constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28–32–46.

[¶ 6] We give the agency's decision great deference, and "[w]e do not make independent findings of fact or substitute our judgment for that of the agency." *Keller v. N.D. Dep't of Transp.*, 2015 ND 9, ¶¶ 4–5, 858 N.W.2d 316 (quoting *Fossum v. N.D. Dep't of Transp.*, 2014 ND 47, ¶ 9, 843 N.W.2d 282). "We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Barros*, 2008 ND 132, ¶ 8, 751 N.W.2d 261 (quoting *Kiecker v. N.D. Dep't of Transp.*, 2005 ND 23, ¶ 8, 691 N.W.2d 266). A hearing officer's evidentiary rulings are reviewed under the abuse of discretion standard. *Potratz v. N.D. Dep't of Transp.*, 2014 ND 48, ¶ 7, 843 N.W.2d 305. "A hearing officer abuses her discretion when she acts in an arbitrary, unreasonable, or capricious manner or misapplies or misinterprets the law." *Dawson v. N.D. Dep't of Transp.*, 2013 ND 62, ¶ 12, 830 N.W.2d 221. Questions of law are fully reviewable. *Barros*, at ¶ 8.

## III

[¶ 7] Filkowski argues the Department had no authority to suspend his driving privileges because the arresting officer failed to send the bottom portion of Form 104, the specimen submitter's checklist, to the Department's director. He argues that N.D.C.C. § 39–20–03.1(4) requires the arresting officer send the director a copy of the certified copy of the analytical report for the blood test and the completed specimen submitter's checklist, which is part of the approved method and that the director does not have the required evidence showing the approved method was followed if the director does not receive the checklist.

[¶ 8] "The Department's authority to revoke or suspend a person's driving privileges is given by statute, and the Department must meet the basic and mandatory provisions of the statute to have authority to revoke or suspend a person's driving privileges." *Keller*, 2015 ND 9, ¶ 7, 858 N.W.2d 316 (quoting *Haynes v. Dir., Dep't of Transp.*, 2014 ND 161, ¶ 8, 851 N.W.2d 172). In determining whether the Department has authority to

act under a statute, the statute "must be construed logically so as not to produce an absurd result." *Keller*, at ¶ 7.

[¶ 9] Section 39–20–03.1, N.D.C.C., "establishes the prerequisite for the exercise of DOT's jurisdiction" and "the Department must comply with the basic mandatory provisions of [the] statute." *Wingerter v. N.D. Dep't of Transp.*, 530 N.W.2d 362, 364 (N.D.1995) (quoting *Bosch v. Moore*, 517 N.W.2d 412, 413 (N.D.1994)). When a driver submits to a chemical test and the test shows the driver has an alcohol concentration of at least eight one-hundredths of one percent by weight, law enforcement must forward to the Department's director a certified written report and "a certified copy of the operational checklist and test records of a breath test and a copy of the certified copy of the analytical report for a blood or urine test for all tests administered at the direction of the officer." N.D.C.C. § 39–20–03.1(4).

[¶ 10] This Court concluded the statute plainly and unambiguously requires the officer forward to the director only a copy of the certified copy of the analytical report for a blood test. *Wingerter*, 530 N.W.2d at 364 (interpreting a prior version of N.D.C.C. § 39–20–03.1, containing the same language at issue in this case). We explained, "the statute does not require transmission of all test records of urine ... or blood tests; it only requires transmission of a certified copy of the analytical report for each test administered." *Id.* at 365. Filkowski does not dispute that a certified copy of the analytical report for the blood test was sent to the director. The arresting officer was not required to send the specimen submitter's checklist to the director for the Department to obtain authority to suspend driving privileges; however, a completed checklist may be introduced as evidence at an administrative hearing to prove fair administration, chain of custody and compliance with the approved testing method. *See* N.D.C.C. § 39–20–07(7); *State v. Jordheim*, 508 N.W.2d 878, 881 (N.D.1993). We conclude the Department has authority to suspend Filkowski's driving privileges.

## IV

[¶ 11] Filkowski argues the hearing officer erred in admitting the analytical report containing the blood test results and other foundational documents. Section 39–20–07, N.D.C.C., governs the admission of blood-alcohol test reports and allows the use of certified documents to establish an evidentiary foundation for the report. *See also Jordheim*, 508 N.W.2d at 881.

■■■■ [¶ 12] Under N.D.C.C. § 39–20–07(5), "[t]he results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee...." Four foundational elements must be documented or demonstrated for the admission of the test report: (1) the sample must be properly obtained, (2) the test must be fairly administered, (3) the method and devices used to test the sample must be approved by the director of the state crime laboratory or the director's designee, and (4) the blood test must be performed by an authorized person or by one certified by the director of the state crime laboratory or the director's designee as qualified to perform it. *Schlosser v. N.D. Dep't of Transp.*, 2009 ND 173, ¶ 9, 775 N.W.2d 695; *see also Frank v. Director, N.D. Dep't of Transp.*, 2014 ND 158, ¶¶ 9–10, 849 N.W.2d 248. Whether a blood test was fairly administered is a preliminary question of admissibility left to the hearing officer's discretion. *See Potratz*, 2014 ND 48, ¶ 21, 843

N.W.2d 305; *State v. Keller*, 2013 ND 122, ¶ 15, 833 N.W.2d 486.

[¶ 13] "Fair administration, chain of custody, and compliance with the [methods approved by the director of the state crime laboratory or the director's designee] can be proved through a completed and certified Form 104." *Jordheim*, 508 N.W.2d at 881. The approved methods, devices and persons certified to administer the test can be shown by introducing copies of records certified by the director of the state crime laboratory. or the director's designee that have been posted with the state crime laboratory division of the attorney general on the attorney general's website. *See* N.D.C.C. § 39–20–07(7); *Jordheim*, at 881. Copies of these certified records must be accepted as prima facie evidence of the matters stated in the records. N.D.C.C. § 39–20–07(7). "When properly completed, these documents furnish the foundation to admit the blood-test report." *Jordheim*, at 881.

[¶ 14] When the documentary evidence and the testimony of the participants does not show the testing participants scrupulously complied with the methods approved by the director of the state crime laboratory or the director's designee, the statutory mode of authentication cannot be used and the Department must establish fair administration of the test through expert testimony. *Painte v. Director, Dep't of Transp.*, 2013 ND 95, ¶ 20, 832 N.W.2d 319; *Jordheim*, at 882.

## A

[¶ 15] Filkowski argues evidence did not establish the arresting officer followed the approved method for collecting and submitting the blood sample for testing because the bottom portion of Form 104, the specimen submitter's checklist, was not sent to the director or presented as evidence at the hearing.

[¶ 16] "Form 104 ... contains directions and a checklist to ensure proper collection and submission of blood samples." *Keller*, 2013 ND 122, ¶ 7, 833 N.W.2d 486 (quoting *Barros*, 2008 ND 132, ¶ 10, 751 N.W.2d 261). We have explained:

"Form 104 has three sections that correspond to the conduct of the three people who normally participate in administering the blood test. The top half of the form includes the name of the person whose blood is drawn, and a list of directions for both the specimen collector and the recipient of the sample at the laboratory. The bottom half of the form contains a similar list for the specimen submitter. The submitter, who will usually be a police officer, is directed to retain this half of Form 104 in police records, undoubtably for later evidentiary use. These lists on the form ... [enable] the actors to complete, sign, and certify that the [director of the state crime laboratory or the director's designee's] directions have been followed."

*Jordheim*, 508 N.W.2d at 881–82. Fair administration of a blood test can be established by proof that the directions in Form 104 have been scrupulously followed. *Keller*, 2013 ND 122, ¶ 7, 833 N.W.2d 486. Testimony from the participants, including the specimen submitter, can be used to show they scrupulously complied with the methods approved by the state crime laboratory director. *See id.* at ¶¶ 8, 15–16.

[¶ 17] In this case, the Department did not offer the bottom half of Form 104 as evidence at the hearing. Schatz testified she removed the bottom half of the form at the time of the blood draw and kept it in the case files. A blank Form 104 was entered into evidence. The instructions on the specimen submitter's checklist are:

"[1.] Used an Intact Kit.

[2.] Affixed Completed Specimen Label/Seal Over the Top, and Down the Sides of the Blood Tube.

[3.] Placed the Blood Tube Inside the Blood Tube Protector and Then Placed it in the Plastic Bag Provided. (*Do Not Remove Liquid Absorbing Sheet*)

[4.] Placed the Plastic Bag and Completed Top Portion of This Form in the Kit Box and Closed It.

[5.] Affixed Tamper–Evident Kit Box Shipping Seal on Kit Box."

[¶ 18] Schatz testified she used an intact testing kit she received from the hospital, she was present during the blood draw, the nurse handed her the vial of blood and she put the seal on the tube, starting at the top and putting it down the side. She testified she put the tube in the blood tube protector with the absorbing sheet, placed the protector into the plastic bag provided in the kit, placed the whole unit with the top portion of Form 104 in the kit box and sealed the box with the kit seal. She testified she mailed the kit to the state crime laboratory in Bismarck. Schatz's testimony established she performed each of the required steps from the specimen submitter's checklist and complied with the approved method.

### B

[¶ 19] Filkowski argues the analytical report containing the blood test results was inadmissible because the Department failed to show an approved method was used to conduct the blood alcohol analysis. He claims the report lists the method used as "Approved Method to Conduct Blood Alcohol Analysis (Rev.0.1)," the Department attempted to admit exhibit 8 as a foundational document for the report, but exhibit 8 is entitled "Approved Method to Conduct Blood Alcohol Analysis (TxS–020) Revision Number 0.1." Filkowski argues the title of exhibit 8 does not match the method listed on the report and, therefore,

no evidence establishes the method detailed in exhibit 8 was the method used.

[¶ 20] The analytical report states the method used to test the blood sample was the "Approved Method to Conduct Blood Alcohol Analysis (Rev.0.1)." The Department introduced exhibit 8 as a foundational document for the report to establish a method approved by the state crime laboratory director was used to test the blood sample. Exhibit 8 includes a statement from the State Toxicologist certifying the attached document was a copy of the "APPROVED METHOD TO CONDUCT BLOOD ALCOHOL ANALYSIS (TxS–020) REVISION NUMBER 0.1." The document attached to the State Toxicologist's statement is titled, "APPROVED METHOD TO CONDUCT BLOOD ALCOHOL ANALYSIS" and includes the statement "Number: TxS–020" and a box stating "Revision: Number 0.1." The title "Approved Method to Conduct Blood Alcohol Analysis Version 0.1" is included on the top of the remaining pages of the exhibit. The Department also presented an affidavit from Kali Hieb stating, "I further certify the analysis of the blood sample has been performed according to the method and with a device approved by the State Toxicologist[.]"

[¶ 21] The hearing officer found the blood sample was tested according to the approved method. The hearing officer considered Filkowski's argument about the report and exhibit 8, and admitted the report and exhibit 8. The analytical report states the method used for testing the blood sample was "Approved Method to Conduct Blood Alcohol Analysis (Rev.0.1)." The foundational document was entitled "APPROVED METHOD TO CONDUCT BLOOD ALCOHOL ANALYSIS" and stated it was "Revision Number: 0.1." The hearing officer did not abuse her discretion in admitting exhibit 8 as a foundational

document for the analytical report containing the blood test results.

## C

[¶ 22] Filkowski argues the hearing officer erred in admitting the analytical report because the report used the word "ethanol," ethanol is not used in N.D.C.C. ch. 39–20 and, therefore, the report was not admissible without expert testimony to explain or define the word "ethanol."

[¶ 23] The analytical report states the result of the test was "Ethanol 0.166 g/110mL." Section 30–20–07(4), N.D.C.C., states, "Alcohol concentration is based upon grams of alcohol per one hundred milliliters of blood...." Chapter 39–20, N.D.C.C., does not specifically define "alcohol."

[¶ 24] "Words in a statute are given their plain, ordinary, commonly understood meaning, unless defined in the code or unless the drafters clearly intended otherwise." *State v. O'Toole,* 2009 ND 174, ¶ 11, 773 N.W.2d 201 (quoting *Sauby v. City of Fargo,* 2008 ND 60, ¶ 8, 747 N.W.2d 65); N.D.C.C. § 1–02–02. "Alcohol" is defined as "a colorless volatile flammable liquid $C_2H_5OH$ formed by vinous fermentation and contained in wine, beer, whiskey, and the other fermented and distilled liquors of which it is the intoxicating principle ... called also ethanol, ethyl alcohol, grain alcohol[.]" *Webster's Third New International Dictionary* 50 (1971). It is also defined as "a: ethanol esp. when considered as the intoxicating agent in fermented and distilled liquors[,] b: drink (as whiskey or beer) containing ethanol[,] c: a mixture of ethanol and water that is usu. 95 percent ethanol." *Merriam Webster's Collegiate Dictionary* 29 (11th ed.2005). Using the plain, ordinary, and commonly understood meaning, the word "alcohol" includes ethanol. We conclude expert testimony was not required and the hearing officer did not err in admitting the report.

## D

[¶ 25] Filkowski argues the analytical report failed to show who performed the analysis of his blood sample so that no evidence establishes the sample was analyzed by a person approved to do the analysis. He claims the report is signed by Kali L. Hieb, but it does not state who performed the analysis.

[¶ 26] The analytical report states:

"The results and conclusions in this report are the opinions and interpretations of the analyst(s) from the analysis of submitted evidence.

Sincerely,

Crime Laboratory Division

Kali L. Hieb

Forensic Scientist"

The report is signed by Hieb. The Department also presented exhibit 1c, Hieb's affidavit, stating:

"I ... certify that I am a Forensic Scientist I and that I have carefully compared the Submission for Blood (104) and Toxicology Alcohol/Volatiles Analytical Report for ...

FILKOWSKI, MICHAEL DALE

and which are attached here, with the original Submission for Blood (104) and Toxicology Alcohol/Volatiles Analytical Report as the same appears on electronic file at the Crime Laboratory Division ... and certify they are true and correct copies of the original Submission for Blood (104) and Toxicology Alcohol/Volatiles Analytical Report on electronic file at the State Crime Laboratory.... I further certify the analysis of the blood sample has been performed according to the method and with a device approved by the State Toxicologist and I am certified by the State Toxicologist to conduct blood analysis to determine alcohol concentration...."

A list of individuals certified to conduct blood alcohol analysis, which included Hieb, was admitted.

[¶ 27] Hieb's affidavit constitutes testimony of a witness. *See* N.D.C.C. § 31–04–01; *Painte*, 2013 ND 95, ¶ 24, 832 N.W.2d 319. The hearing officer found the chemical analysis was conducted by a person approved to do the analysis. Evidence supports the hearing officer's finding. Prima facie evidence established that a qualified individual conducted the analysis. *Cf. Painte*, at ¶ 25 (forensic scientist's affidavit was sufficient for establishing prima facie evidence of her status as director's designee). Filkowski did not present any evidence to disprove that Hieb was a designee of the director or that she conducted the analysis. The hearing officer did not abuse her discretion in admitting the report and other foundational documents.

### E

[¶ 28] The documents introduced into evidence and certified by the director of the state crime laboratory and Schatz's testimony establish Filkowski's blood sample was properly obtained, the blood test was fairly administered, an approved method was used and the test was performed by an authorized person. We conclude the hearing officer did not abuse her discretion in admitting the results of Filkowski's blood test or the foundational documents.

### V

[¶ 29] We affirm the district court's judgment affirming the hearing officer's decision to suspend Filkowski's driving privileges for 91 days.

[¶ 30] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL

RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.