2016 ND 98

STATE of North Dakota, Plaintiff and Appellee

v.

Austin Van ZOMEREN, Defendant and Appellant.

No. 20150267.

Supreme Court of North Dakota.

May 26, 2016.

450

Britta K. Demello Rice, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Michael R. Hoffman, Bismarck, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Austin Van Zomeren appeals a criminal judgment after a jury found him guilty of driving with a blood alcohol concentration of at least .08 percent. We affirm, concluding the district court did not abuse its discretion in admitting the results of Van Zomeren's blood test.

I

[¶ 2] A Burleigh County sheriff's deputy stopped Van Zomeren for crossing the fog line while driving and arrested him for driving under the influence of alcohol after failing a preliminary breath test. The deputy read Van Zomeren the implied consent advisory and he agreed to take a blood test, which showed a blood alcohol content exceeding .08 percent.

[¶ 3] Before trial Van Zomeren moved to suppress the blood test, arguing he did not voluntarily consent to take the test. He argued the deputy's reading of the implied consent advisory coerced him to take the test by stating he would be charged with a crime if he refused the test. The district court rejected his argument and denied the motion to suppress.

[¶ 4] At trial Van Zomeren objected to the admission of Form 104, the analytical report containing his blood test results. He argued the nurse drawing his blood did not follow the approved method for blood collection because after drawing the blood into a tube she shook the tube instead of inverting it several times. He argued the State was required to show fair administration of the blood test through expert testimony. The State argued the blood test was fairly administered and shaking the tube instead of inverting it did not affect the reliability or accuracy of the test. The district court allowed the analyst who tested the blood to testify that shaking instead of inverting would not affect the accuracy of the test results. After discussing the definitions of "invert" and "shake," the court found expert testimony was not necessary and admitted Form 104.

II

[¶ 5] Van Zomeren argues the district court erred in denying his motion to suppress the blood test. He argues his consent was not voluntary because the deputy's reading of the implied consent advisory coerced him into consenting to the blood test. Van Zomeren acknowledges the issue he raises has been decided by this Court in *State v. Gackle*, 2015 ND 271, ¶ 5, 871 N.W.2d 589, however, he requests us to delay deciding this case until the United States Supreme Court decides whether North Dakota's implied consent law is constitutional. *See State v. Birchfield*, 2015 ND 6, 858 N.W.2d 302, cert. granted, —— U.S. ——, 136 S.Ct. 614, 193 L.Ed.2d 494 (2015); *Beylund v. Levi*, 2015 ND 18, 859 N.W.2d 403, cert. granted, —— U.S. ——, 136 S.Ct. 614, 193 L.Ed.2d 495 (2015). We decline Van Zomeren's request and reject his argument about the constitutionality of the implied consent advisory.

III

[¶ 6] Van Zomeren argues the district court erred by receiving into evidence Form 104, which is the analytical report containing his blood test results. He ar-

gues the nurse did not follow the approved method for collecting his blood because she shook the blood tube instead of inverting it as required by the method approved by the state toxicologist. He argues the State should have introduced expert testimony to establish fair administration of the blood test.

[¶ 7] A district court's evidentiary ruling is reviewed under an abuse-of-discretion standard. *State v. Chase*, 2015 ND 234, ¶ 7, 869 N.W.2d 733. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law." *Hagel v. Hagel*, 2006 ND 181, ¶ 9, 721 N.W.2d 1.

[¶ 8] Whether a blood test was fairly administered is a preliminary question of admissibility left to the district court's discretion. *State v. Keller*, 2013 ND 122, ¶ 7, 833 N.W.2d 486. "Section 39–20–07, N.D.C.C., governs the admission of blood-alcohol test reports and allows the use of certified documents to establish an evidentiary foundation for the report." *Filkowski v. North Dakota Dep't of Transp.*, 2015 ND 104, ¶ 11, 862 N.W.2d 785. "Four foundational elements [found in N.D.C.C. § 39–20–07(5) ] must be documented or demonstrated for the admission of the test report: (1) the sample must be properly obtained, (2) the test must be fairly administered, (3) the method and devices used to test the sample must be approved by the director of the state crime laboratory or the director's designee, and (4) the blood test must be performed by an authorized person or by one certified by the director of the state crime laboratory or the director's designee as qualified to perform it." *Filkowski*, at ¶ 12.

[¶ 9] Fair administration and compliance with the approved method can be proven through a completed and certified Form 104. *Filkowski*, 2015 ND 104, ¶ 13, 862 N.W.2d 785. Form 104 contains directions and a checklist to ensure proper collection and submission of blood samples. *Keller*, 2013 ND 122, ¶ 7, 833 N.W.2d 486. "Fair administration of a blood test can be established by proof that those directions have been scrupulously followed; however, 'scrupulous' compliance does not mean 'hypertechnical' compliance." *Id.* (quoting *Barros v. North Dakota Dep't of Transp.*, 2008 ND 132, ¶ 10, 751 N.W.2d 261).

[¶ 10] If the documentary evidence and testimony does not show scrupulous compliance with the methods approved by the director of the state crime laboratory or the director's designee, the evidentiary shortcut provided by N.D.C.C. § 39–20–07 cannot be used and fair administration of the test must be established through expert testimony. *Filkowski*, 2015 ND 104, ¶ 14, 862 N.W.2d 785; *Schlosser v. North Dakota Dep't of Transp.*, 2009 ND 173, ¶ 10, 775 N.W.2d 695.

[¶ 11] One of Form 104's checklist items to be completed by a blood specimen collector states: "Drew Blood Into Tube and Inverted Several Times." The current version of Form 104 does not state the purpose of inverting the tube several times, however, earlier versions of Form 104 stated the purpose of inverting the tube several times is to prevent clotting by mixing the blood with a powder chemical inside the tube. *See McNamara v. North Dakota Dep't of Transp.*, 500 N.W.2d 585, 589 (N.D.1993) ("Invert the vial several times to mix the chemical and prevent clotting."); *State v. Schwalk*, 430 N.W.2d 317, 322 (N.D.1988) ("Immediately invert the vial several times to dissolve the chemical and prevent clotting.").

[¶ 12] Here, the nurse who collected Van Zomeren's blood checked the box on Form 104 indicating she drew blood into the tube and inverted it several times. However, after watching a video recording of the blood draw at trial, the deputy testified the nurse shook the blood tube several times instead of inverting it. Van Zomeren objected to the admission of Form 104 and his test results, arguing the nurse did not follow the approved method for collecting blood and expert testimony would be needed to show fair administration of the test. In response, the State argued the analyst who tested Van Zomeren's blood would testify that shaking the blood tube would not affect the reliability or accuracy of the test results. Van Zomeren renewed his objection and again argued expert testimony would be required to show fair administration of the test. The district court overruled the objection, and after a break, further explained its ruling that expert testimony was not necessary:

> "All right. We are outside the presence of the jury. And Ms. Rice, Mr. Hoffman and Mr. Van Zomeren are here. I wanted to go on the record. *State of North Dakota v. Keller* indicates that . . . it is up to the court to decide whether or not the certified copy [of Form 104] should be admitted. And as I re-read *Keller*, the issue there . . . as in here was whether or not the approved method was followed. The issue there was whether or not the officer had completed or had signed—dotted all the I's and crossed all the T's on Form 104. And he testified that although he didn't put his name on there, it was his handwriting. And the . . . Supreme Court indicated that whether a blood test was fairly administered is a preliminary question of admissibility left to the digression (sic) of the trial judge. That's in paragraph 15. And talked about the

state toxicologist has to approve the satisfactory devices and methods, et cetera.

> "In this case we don't have an issue of whether or not [Form] 104 was properly filled out. We have an issue of whether or not the fact that the nurse shook the vile (sic) as opposed to inverted the vile (sic) had an affect on the outcome [of the test]. I have looked for definitions of invert versus shaken. And I don't find a definition in Black's Law Dictionary. In Webster's New World Compact Desk Dictionary and style guide . . . ., invert is described as to turn upside down, to reverse the order, position, direction, et cetera of. Shake is defined as to move quickly up and down back and forth, et cetera. To bring force, mix, et cetera, by brisk movements, to tremble or cause to tremble, to become or cause to become unsteady, unnerved, et cetera, as in greeting. The act of shaking.

> "So what Mr. Hoffman is arguing is that the Court should recognize that there's a significant difference or a significant enough difference between an invert and a shake that I should determine that the correct method was not used. And I don't know—there's no speed defined in invert. I don't know that there needs to be any expert testimony to talk about invert versus shake. And so I wanted to go on the record to indicate I still am going to leave my ruling in place, but I—I wanted to go on and indicate that I have looked up a definition of invert and a definition of shake, and that's what I found. And I'm using that definition in my determination here as to whether or not I believe the State would need expert testimony to counter that."

[¶ 13] Van Zomeren argues this Court held in *McNamara*, 500 N.W.2d at 590 that shaking instead of inverting a blood tube deviated from the approved method.

We disagree. *McNamara* mentioned shaking while discussing the questioning between McNamara's attorney and the arresting officer. *Id.* The issue in *McNamara*, however, dealt with whether the blood tube was only inverted one time, not whether it was inverted or shook several times. *Id.*

[¶ 14] This case also differs from *Schwalk*, dealing with a failure to invert the blood tube at all. 430 N.W.2d at 323. Failure to invert called into question whether the blood properly mixed with the chemical inside the tube. *Id.* at 323–24. We stated fair administration of a test can be established by expert testimony that the approved method was scrupulously complied with. *Id.* at 323.

[¶ 15] Here, a definition of "shake" used by the district court is "to mix." There is no dispute the nurse's shaking of the tube mixed the blood with the chemical inside the tube. The court found a significant difference did not exist between the definitions of "invert" and "shake" and did not require the State to prove fair administration of the test through expert testimony. The court's reasoned explanation leads to a conclusion that the approved method was scrupulously complied with. At oral argument Van Zomeren's attorney stated shaking can lead to the breakage of red blood cells, however, he did not submit evidence at trial showing shaking has a negative effect on blood test results. On this record we conclude the court did not abuse its discretion in concluding there was scrupulous compliance with the approved method and the court did not abuse its discretion in admitting Van Zomeren's blood test results into evidence.

## IV

[¶ 16] We affirm the criminal judgment.

[¶ 17]   GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.