# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

---

### 2025 ND 45

---

Darren W. Hoistad,          Appellant

     v.

Ron Henke, Director,

North Dakota Department of Transportation,          Appellee

---

### No. 20240297

---

Appeal from the District Court of Richland County, Southeast Judicial District, the Honorable Bradley A. Cruff, Judge.

REVERSED.

Opinion of the Court by Bahr, Justice.

Mark A. Friese (argued) and Drew J. Hushka (on brief), Fargo, ND, for appellant.

Michael T. Pitcher, Assistant Attorney General, Bismarck, ND, for appellee.

**Hoistad v. NDDOT**
**No. 20240297**

**Bahr, Justice.**

[¶1]   Darren Hoistad appeals from a district court judgment affirming the hearing officer's decision to suspend Hoistad's driving privileges for 91 days. On appeal, Hoistad argues the hearing officer erred in admitting a chemical breath test result based on a finding the arresting officer complied with the approved method. He further claims he is entitled to attorney's fees and costs under N.D.C.C. § 28-32-50(1). We reverse the district court's judgment and the hearing officer's decision revoking Hoistad's driving privileges. We hold Hoistad is not entitled to attorney's fees and costs under section 28-32-50(1).

I

[¶2]   In May 2024, a state trooper arrested Hoistad for driving under the influence. Hoistad consented to a chemical breath test, which the trooper administered. The chemical breath test showed a result above the legal limit of 0.08.

[¶3]   Hoistad requested an administrative hearing. At the hearing, the North Dakota Department of Transportation offered several exhibits, including the chemical breath test results and the approved method to conduct breath tests with the Intoxilyzer 8000. Under the approved method, the subject (driver) blows into the Intoxilyzer until the tone stops and the instrument displays a zero to the left of the decimal point, which indicates the collection of an adequate breath sample. The trooper testified that while he was obtaining the second of the two subject tests, he instructed Hoistad to "blow" into the Intoxilyzer, including eleven times *after* the Intoxilyzer tone stopped and the instrument registered a zero ahead of the decimal point. The trooper further testified the number displayed on the instrument when the tone stopped was below the legal limit. The hearing officer found:

> During the obtaining of the second subject test, the Intoxilyzer showed 0.079 when the Intoxilyzer stopped beeping and registered the zero before the decimal point. While [the trooper] was

1

administer[ing] the second test, [the trooper] continually repeated the word "blow" to Hoistad. This included eleven times after the Intoxilyzer stopped beeping and registered the zero before the decimal point.

[¶4] Hoistad objected to the admission of the breath test results, arguing the trooper violated the approved method by instructing Hoistad to continue blowing into the instrument after the tone stopped and the Intoxilyzer displayed a zero before the decimal point. The hearing officer overruled Hoistad's objection and suspended his driving privileges for 91 days. Hoistad appealed to the district court, which affirmed the hearing officer's decision suspending Hoistad's driving privileges.

## II

[¶5] Hoistad argues the chemical breath test was not fairly administered because, contrary to the approved method, the trooper repeatedly instructed him to blow into the Intoxilyzer after the tone stopped and the instrument displayed a zero to the left of the decimal point. Because the trooper did not administer the test in accordance with the approved method, and the Department did not provide expert testimony on the effect of the deviation on the accuracy and reliability of the breath test result, Hoistad argues the hearing officer erred in admitting the chemical breath test result.

### A

[¶6] The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs our review of the Department's decision to suspend a person's driving privileges. *Fisher v. N.D. Dep't of Transp.*, 2024 ND 128, ¶ 5, 9 N.W.3d 645. In reviewing the Department's decision, we give deference to the Department's findings of fact and review its legal conclusions de novo. *Id*. This Court must affirm the Department's decision unless it determines a statutory ground for reversal is present. N.D.C.C. § 28-32-46; N.D.C.C. § 28-32-49 ("The judgment of the district court in an appeal from an order . . . of an administrative agency or the commission may be reviewed in the supreme court on appeal in the same manner as provided in section 28-32-46[.]"). Grounds for reversal include the

"order is not in accordance with the law" and "the findings of fact made by the agency are not supported by a preponderance of the evidence." N.D.C.C. § 28-32-46(1), (5).

[¶7] "The admissibility of evidence at an adjudicative hearing before an administrative agency is governed by the North Dakota Rules of Evidence." *Meiers v. N.D. Dep't of Transp.*, 2025 ND 21, ¶ 39, --- N.W.3d ---- (quoting *Ouradnik v. Henke*, 2020 ND 39, ¶ 19, 938 N.W.2d 392); *see also* N.D.C.C. § 28-32-24(1) ("The admissibility of evidence in any adjudicative proceeding before an administrative agency shall be determined in accordance with the North Dakota Rules of Evidence[,]" unless application of the rules is expressly waived.). "A hearing officer is afforded broad discretion to control the admission of evidence at the hearing, and the decision to admit or exclude evidence will only be reversed on appeal if the hearing officer abused his discretion." *McClintock v. Dep't of Transp.*, 2021 ND 26, ¶ 7, 955 N.W.2d 62 (quoting *May v. Sprynczynatyk*, 2005 ND 76, ¶ 24, 695 N.W.2d 196). "Hearing officers abuse their discretion if they act in an arbitrary, unreasonable, or unconscionable manner, or if they misinterpret or misapply the law." *Ell v. Dir.*, 2016 ND 164, ¶ 6, 883 N.W.2d 464. Thus, the issue on appeal is whether the hearing officer properly admitted the Intoxilyzer test result into evidence. *See Keller v. N.D. Dep't of Transp.*, 2015 ND 81, ¶ 11, 861 N.W.2d 768 (reversing administrative suspension because the hearing officer should not have admitted the driver's Intoxilyzer test record into evidence); *Price v. N.D. Dep't of Transp. Dir.*, 469 N.W.2d 560, 562 (N.D. 1991) (reversing suspension of driving privileges when the hearing officer improperly admitted the Intoxilyzer test result into evidence).

B

[¶8] "Section 39-20-07(5), N.D.C.C., governs the admissibility of Intoxilyzer test results." *Keller*, 2015 ND 81, ¶ 6 (quoting *Buchholz v. N.D. Dep't of Transp.*, 2002 ND 23, ¶ 7, 639 N.W.2d 490). "The purpose of section 39-20-07, N.D.C.C., is to ease the requirements for the admissibility of chemical test results while ensuring that the test upon which the results are based is fairly administered." *Ringsaker v. Dir., N.D. Dep't of Transp.*, 1999 ND 127, ¶ 7, 596 N.W.2d 328. Fair administration of an Intoxilyzer test may be established by proof the approved

3

method was scrupulously followed. *Id.* ¶ 8; *State v. Stroh*, 2011 ND 139, ¶ 4, 800 N.W.2d 276. "However, 'scrupulous' compliance does not mean 'hypertechnical' compliance." *Buchholz*, ¶ 7.

[¶9] "It is the Department's burden to prove the Intoxilyzer test was fairly administered." *Ringsaker*, 1999 ND 127, ¶ 11. If the Department fails to establish compliance with the approved method which goes to the scientific accuracy and reliability of the test, the Department must prove fair administration of the test through expert testimony. *Keller*, 2015 ND 81, ¶ 8; *see also Ell*, 2016 ND 164, ¶ 19 ("If the documentary evidence and testimony does not show scrupulous compliance with the methods approved by the director of the state crime laboratory or the director's designee, the evidentiary shortcut provided by N.D.C.C. § 39-20-07 cannot be used and fair administration of the test must be established through expert testimony." (quoting *State v. Van Zomeren,* 2016 ND 98, ¶ 10, 879 N.W.2d 449)). "When there is a deviation from the approved method that affects the test's scientific accuracy or reliability and there is no expert witness testimony on the effect, the test has not been fairly administered." *Keller,* ¶ 8. "However, not all deviations from an approved method are fatal." *Id.*

> [W]hen the deviation from the approved method could not have affected the reliability or accuracy of the test results, the deviation does not render the test results inadmissible. We have never held that expert testimony is necessary to explain what is readily observable to the ordinary person.

*Id.* (quoting *State v. Keller,* 2013 ND 122, ¶ 8, 833 N.W.2d 486).

[¶10] The hearing officer concluded "[t]he Intoxilyzer test was administered in accordance with the approved method." Noting the approved method requires an operator to "instruct the subject to blow into the mouthpiece[,]" the hearing officer determined the approved method provides "no information as to the manner, number, or when the instruction is to be given." The hearing officer further determined there is "[n]othing in the approved method about when a subject is to stop blowing or that it is not in accordance with the approved method if a subject continues to blow after an adequate breath sample had been obtained."

[¶11] The approved method to conduct breath tests with the Intoxilyzer 8000 "requires compliance" with the written procedures "and the instructions displayed by the Intoxilyzer 8000." Under the approved method for the Intoxilyzer 8000, the operator must take two breath samples. After the first breath sample, the operator follows specified procedures to prepare the Intoxilyzer for the second breath sample. The approved method for the second breath sample requires the operator adhere to the following procedure:

> 15. "Please Blow Until Tone Stops" displays. At this point, the operator shall place another clean mouthpiece in the end of the breath tube and instruct the subject to blow into the mouthpiece.
>> a. If the subject provides a breath sample, the instrument will sound a continuous tone and displays "Subject Test" and "Rslt: #.###", which is the result of the breath alcohol concentration. The collection of an adequate breath sample is indicated when the zero to the left of the decimal point appears on the display.
>> b. If the subject does not blow with sufficient pressure and/or time to achieve an adequate breath sample, "Please Blow Until Tone Stops" will reappear with intermittent beeps. The subject has another three minutes to provide an adequate breath sample.

[¶12] The hearing officer's conclusion the approved method provides no information as to "when" the operator is to instruct the driver to blow into the mouthpiece is contrary to the plain language of the approved method. The

approved method states when ("At this point") the operator is to instruct the subject to blow into the mouthpiece. Under the approved method, when the Intoxilyzer displays "Please Blow Until Tone Stops," the operator places a "clean mouthpiece in the end of the breath tube and instruct[s] the subject to blow into the mouthpiece." At no other time does this procedure direct the operator to instruct the subject to blow into the mouthpiece.

[¶13] The hearing officer's conclusion there is "[n]othing in the approved method about when a subject is to stop blowing" is also contrary to the approved method. When it is ready for the second breath sample, the Intoxilyzer 8000 displays, "Please Blow Until Tone Stops." The word "until" in this context signifies the point at which the driver should cease blowing into the instrument. *See American Heritage Dictionary* 1901 (5th ed. 2018) (defining "until" to mean "[u]p to the time of"); *Merriam-Webster's Dictionary* 1373 (11th ed. 2005) (defining "until" to mean "up to the time that" and "up to such time as"); *New Oxford American Dictionary* 1901 (3d ed. 2010) (defining "until" to mean "up to (the point in time or the event mentioned)"). The Intoxilyzer 8000 instructs the driver to stop blowing when the tone stops. The approved method requires compliance with "the instructions displayed by the Intoxilyzer 8000." The trooper's repeated instruction to Hoistad to "blow" after the tone stopped was contrary to and, thus, did not comply with "the instructions displayed by the Intoxilyzer 8000."

[¶14] At oral argument, the Department asserted it made a prima facie showing the approved method was followed by providing a copy of the approved method, the Intoxilyzer test record and checklist, and other documents. *See Olson v. N.D. Dep't of Transp.*, 2013 ND 104, ¶ 10, 831 N.W.2d 742 ("Once the Intoxilyzer Test Record and Checklist is admitted into evidence, the Department has established its contents, prima facie, without further foundation."). However, a driver "may either rebut the presumption of fair administration by proving a lack of fair administration despite compliance with the approved method or by showing a departure from the approved method." *Mees v. N.D. Dep't of Transp.*, 2013 ND 36, ¶ 12, 827 N.W.2d 345. "As such, once the record and checklist was received into evidence, [Hoistad] had the burden to present sufficient evidence to rebut the prima facie evidence of fair administration by proving [the trooper] had not followed the approved method." *Thorsrud v. N.D. Dep't of Transp.*, 2012

6

ND 136, ¶ 10, 819 N.W.2d 483. Hoistad met that burden through the testimony of the trooper. The hearing officer's findings regarding how the trooper administered the test, findings supported by the uncontested evidence, show the trooper did not administer the test in accordance with the approved method. *See Wagner v. Backes*, 470 N.W.2d 598, 599 (N.D. 1991) (concluding officer deviated from the approved method based on cross-examination despite officer's testimony he followed the approved method).

[¶15] We conclude the hearing officer's finding the trooper conducted the test in accordance with the approved method is not supported by the evidence. To the contrary, the undisputed evidence and the hearing officer's own findings are that the trooper repeatedly instructed Hoistad to "blow" after the tone stopped. The trooper's actions were directly contrary to the displayed instruction on the Intoxilyzer 8000 and the approved method.

2

[¶16] The hearing officer concluded it is "conjecture" that the trooper's actions "somehow 'manufactured' a higher test result[,]" and that "the Intoxilyzer would not be much of a scientific instrument if the results could be manipulated that easily by the operator."

[¶17] "It is the Department's burden to prove the Intoxilyzer test was fairly administered." *Ringsaker*, 1999 ND 127, ¶ 11. "When there is a deviation from the State Toxicologist's approved method of conducting a test, a hearing officer cannot assume that the test was accurate." *Price*, 469 N.W.2d at 562.

[¶18] The hearing officer's comment that it was "conjecture" the trooper's actions "somehow 'manufactured' a higher test result" suggests Hoistad "had a burden to establish such evidence. Instead it is the burden of the Department to establish that the Intoxilyzer test was fairly administered." *Lee v. N.D. Dep't of Transp.*, 2004 ND 7, ¶ 17, 673 N.W.2d 245. "If the Department wishes to rely on the eased requirements for admissibility under N.D.C.C. § 39-20-07, it must adhere to those requirements." *Id.*

7

[¶19] The Department argues "Hoistad has failed to demonstrate that the alleged deviation—continuing to blow after the tone stopped—affected the test's scientific accuracy." The Department further argues:

> While the screen may have shown .079 at that snippet in time, it does not mean the Intoxilyzer was displaying the final alcohol concentration level it would be reporting on the test record. In other words, there is no evidence that the .079 was Hoistad's alcohol concentration level at the time an adequate sample was first obtained. That is merely speculative on Hoistad's part.

Like the hearing officer's comment, the Department's arguments improperly attempt to place the burden on Hoistad to show the trooper's deviation from the approved method did not impact the reliability and accuracy of the test.

[¶20] Unless the impact of a deviation is within the knowledge of an ordinary person, it is the Department's burden to show through expert testimony whether a deviation from the approved method impacted the accuracy and reliability of the test. *Keller*, 2015 ND 81, ¶ 8. An ordinary person does not know what impact, if any, a subject's continued blowing into the Intoxilyzer after the tone stops has on the test results. The approved method necessarily accommodates some breathing after the Intoxilyzer tone stops due to human reaction time. No driver can instantly cease blowing the moment the tone ends. This raises two possibilities: either the Intoxilyzer stops sampling breath when the tone stops, making extended breathing irrelevant, or continued breathing affects the results in ways that require expert explanation. Although the record does not indicate how long Hoistad blew after the tone stopped, it was longer than the typical reaction time because the trooper instructed Hoistad to "blow" eleven times after the tone stopped. "This is not a case in which we can say with certainty that the testing officer's 'deviation from the State Toxicologist's Approved Method . . . in no way could have affected the reliability and accuracy of the test results' or 'could not have substantially affected test results.'" *Price*, 469 N.W.2d at 562 (cleaned up). And the Department did not provide expert witness testimony on the effect of the deviation.

[¶21] Again attempting to place the burden on Hoistad to prove the impact of the trooper's deviation from the approved method, the Department asserts "the approved method does not designate that providing additional breathing is problematic." As we have repeatedly held, it is the Department's burden to show through expert testimony whether a deviation from the approved method impacted the accuracy and reliability of the test. *Keller*, 2015 ND 81, ¶ 8. The approved method's silence about the impact of a deviation does not meet the Department's burden.

[¶22] In *Keller*, the officer deviated from the approved method by prematurely aborting the test sequence. 2015 ND 81, ¶ 10. This Court explained, "the approved method is silent regarding a premature abortion of the testing sequence, and the Department did not offer expert testimony to address the effect of manually aborting the test before the machine timed out." *Id.* We continued, "We cannot say, without expert advice, that the officer's premature termination of the testing sequence did not affect the test results[.]" *Id.* We concluded the hearing officer should not have admitted the Intoxilyzer test record into evidence, writing, "Because the officer deviated from the Approved Method to Conduct Breath Tests which may have affected the scientific accuracy or reliability of the test, and there was no expert testimony on the effect, if any, of the deviation, the Department failed to show that the test was 'fairly administered.'" *Id.* ¶ 11.

[¶23] Similarly, this Court rejected the Department's attempt to place the burden on the driver in *Wagner v. Backes*. In *Wagner*, the Department argued "that the deviation from the approved method could not have affected the test results." 470 N.W.2d at 600. We explained:

> It is true that not all deviations from an approved method are fatal. We have required expert testimony to meet the foundational requirements for the admission of chemical analysis results when the director has not shown scrupulous compliance with those portions of an approved method which prescribe the procedures for collecting and testing the samples used in the chemical analysis and which, therefore, go to the scientific accuracy and reliability of the test. When, however, we have been able to say that the deviation

9

> involved some clerical or ministerial aspect of an approved method and, therefore, could not have affected the test results, we have upheld a license suspension.

*Id.* (internal citations omitted). Because the officer's deviation from the approved method involved more than a clerical or ministerial aspect of the approved method, we wrote, "We cannot say, without expert advice, that the failure to follow the portion of the approved method governing the timely insertion of the test record could not affect the test results." *Id.; cf. Ringsaker*, 1999 ND 127, ¶ 11 ("[W]here questions exist regarding the approved method, the State Toxicologist or an authorized deputy should clarify or explain the approved method and whether or not the variance could have affected the blood alcohol test result.").

[¶24] Here, the trooper's deviation from the approved method involves the procedures for collecting and testing the sample, raising the possibility that the deviation impacted the test result. Thus, we are left to question the accuracy or reliability of the chemical breath test result because the Department did not provide expert testimony addressing the impact, if any, of the deviation from the approved method. We do not decide today the admissibility of the Intoxilyzer test result if a driver voluntarily continues to blow into the Intoxilyzer after the tone stops and the instrument displays a zero to the left of the decimal point.

[¶25] We conclude the hearing officer misapplied the law by placing the burden on Hoistad to show the trooper's deviation from the approved method impacted the accuracy and reliability of the breath test result. Because the trooper deviated from the approved method, and there was no expert testimony on the effect of the deviation on the accuracy or reliability of the test result, the Department failed to show the test was fairly administered.

[¶26] In conclusion, we hold the hearing officer's finding the trooper conducted the test in accordance with the approved method is not supported by the evidence. We further conclude the hearing officer abused his discretion in admitting the Intoxilyzer test result into evidence because the Department failed to show the test was fairly administered. *See Ell*, 2016 ND 164, ¶ 22 ("Because the hearing officer erred in admitting the breath test result, we conclude the hearing

officer's findings are not supported by a preponderance of the evidence and the decision is not in accordance with the law.").

III

[¶27] Hoistad argues he is entitled to attorney's fees and costs under N.D.C.C. § 28-32-50(1). Section 28-32-50(1) provides a two-part test which must be met to award attorney fees: "first, the nonadministrative party must prevail, and second, the agency must have acted without 'substantial justification.'" *Lamplighter Lounge, Inc. v. State ex rel. Heitkamp*, 523 N.W.2d 73, 75 (N.D. 1994). Here, Hoistad prevailed and satisfies the first requirement of section 28-32-50(1). Thus, the issue is whether the Department acted without substantial justification.

[¶28] This Court has stated:

> [S]ubstantially justified means 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person. A position may be justified, despite being incorrect, so long as a reasonable person could think that it has a reasonable basis in law and fact. Substantial justification represents a middle ground between the automatic award of fees to the prevailing party on one side, and awarding fees only when a position is frivolous or completely without merit on the other.

*Lamplighter Lounge*, 523 N.W.2d at 75 (cleaned up). "Merely because an administrative agency's actions are not upheld by a court does not mean that the agency's action was not substantially justified." *Kroschel v. Levi*, 2015 ND 185, ¶ 35, 866 N.W.2d 109 (quoting *Tedford v. Workforce Safety & Ins.*, 2007 ND 142, ¶ 25, 738 N.W.2d 29). "If a district court agrees an agency's legal position was correct, it is a strong indicator that 'a reasonable person could think the position is correct, and the position has a reasonable basis in law and fact.'" *Goff v. Panos*, 2023 ND 149, ¶ 10, 994 N.W.2d 190 (quoting *Tedford*, ¶ 27).

[¶29] The hearing officer and district court believed a reasonable basis in law and fact existed to uphold suspension of Hoistad's driving privileges. Although we conclude the hearing officer erred in concluding the trooper conducted the test in accordance with the approved method and abused his discretion in

11

admitting the Intoxilyzer breath test results, we conclude the hearing officer acted with substantial justification in his decision for purposes of N.D.C.C. § 28-32-50. We deny Hoistad's request for attorney's fees and costs under N.D.C.C. § 28-32-50(1).

## IV

[¶30] We reverse the district court's judgment and the hearing officer's decision revoking Hoistad's driving privileges for 91 days. We also hold Hoistad is not entitled to attorney's fees and costs under section 28-32-50(1).

[¶31] Jon J. Jensen, C.J.
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Douglas A. Bahr